JAMES PARKER, JR., and THOMAS WRIGHT *v.* THE CITY OF SYRACUSE.

An order for the payment of money in the hands of the payee, or his assignee, is evidence in writing of his title to the payment, which cannot be varied or contradicted by parol evidence.

But it is competent for parties, after such order has been delivered or assigned, to waive rights that have been acquired thereby, or to modify them; which waiver or modification may be proved *dehors* the order itself.

THE appeal in this case is by the plaintiffs from a judgment of the Supreme Court, rendered upon the report of a referee: By this report, only $41.59 was found due to the plaintiffs, and judgment was consequently given against them for the balance of the defendant's costs, which amounted to $77.80.

The action was brought to recover an amount alleged to be due the plaintiffs from the city corporation, arising out of the following circumstances: One A. L. Scofield had been employed by the proper authorities of the city to construct certain plank sidewalks, in the streets, he furnishing the materials; and on the 23d day of January, 1857, there was due to him for such work and materials the sum of $594.08, which had accrued in the year 1854, and $1,210.49 which accrued in 1856. The plaintiffs, during the year 1856, had furnished lumber to Scofield for, and which was used in that work, for which he was indebted to them in the sum of $1,420. On the said 23d January, 1857, Scofield signed and delivered to the plaintiffs an order on the comptroller of the city in the following words: "John A. Clark, comptroller: Pay Parker & Wright fourteen hundred and twenty dollars on plank road and sidewalk accounts, and charge to my account. January 23, 1857. A. L. SCOFIELD."

On the same day, the plaintiffs left this paper with Mr. Clark, the comptroller, who, though he did not accept it, gave Mr. Parker, the plaintiff, who brought it, to understand that it would be paid so far as there should be moneys due to Scofield, and funds applicable to its payment.

According to the finding of fact of the referee, there was a prior order given by Scofield to one Bogg for $50. The comptroller paid that order, and he also paid Scofield, after he had received the plaintiffs' order, one hundred and ten dollars; and he paid the plaintiffs on account of their order, at various times, $1,014. On deducting these several sums from the $1,210.49, owing by the city to Scofield for the work done in 1856, there would remain $36.49, which, with the interest thereon, made up the sum reported to be due to the plaintiffs. The referee excluded from the influence of the plaintiffs' order the amount due to Scofield for the work done in 1854. The plaintiffs claimed that their order embraced the whole of the indebtedness of city to Scofield, including that which was owing for work done in 1854; and also that the payments by the city to Scofield, after notice of the order, was in violation of their rights. Evidence was given addressed to these points. One Williston, an employee in the comptroller's office, was examined on behalf of the defendant, and stated that he was present at an interview between the comptroller, Scofield and Mr. Parker, one of the plaintiffs, at the comptroller's office, immediately after the giving of the order to the plaintiffs, that paper being then in the hands of the comptroller, in which Scofield mentioned certain amounts which he said he was in honor bound to pay out of the fund, and that the balance should go to the plaintiffs, that he understood all the parties to assent to that arrangement; but he could not state the precise amount reserved to Scofield. The defendant's counsel then asked the witness the following question: Out of what fund was Scofield to be paid for the work in question? It was objected to by the plaintiffs, who excepted to the ruling admitting it. The answer was that "he was to be paid from the local improvement for the particular work performed. Nothing was said about the debt of 1854 in that interview. A similar question was raised and decided against the plaintiffs, who excepted, in another part of the witness' examination, and the testimony thus received was to the effect that the witness several times looked over the accounts of the indebtedness of the city

to Scofield, with the plaintiff Parker, and that no accounts were referred to on either occasion except those for the work of 1856. He said "Mr. Parker claimed for work of 1856, and nothing more." Mr. Clark, the comptroller, in his examination on behalf of the defendant, related several conversations which he had had with Parker and Scofield respecting the claim of the plaintiffs under their order, and said that in all of said interviews Parker spoke only of the indebtedness for work in 1856, and that he wanted to know what was the amount due Scofield for work in 1856. The witness also testified, in effect, that Parker assented to a proposal that the witness, as comptroller, might pay to Scofield, notwithstanding the order, an amount of about $100, a little more or a little less, which Scofield said he had pressing need of.

It appeared that the work of this kind for the city was done in 1856 under a different system than that which prevailed in 1854. In the earlier year, the contractor was entitled to a draft on the treasury when his work was done, but in 1856 the work was done under contracts by the terms of which the money was to be raised by assessments for local improvements, and to be paid only when the city should be in funds from the proceeds of the local taxation.

Both Scofield and Parker, on their examinations, denied that there had been any agreement or understanding with the comptroller that Scofield should receive anything to the prejudice of the order, or that there was any understanding limiting the order to the work of 1856. The plaintiffs offered to prove by Scofield that it was the express understanding between him and the plaintiffs, at the time the order was given, that if the amount due for the work of 1856 was not adequate to the payment of the order, it was to be paid out of the work of 1854. The defendant objected to the evidence, and it was excluded and the plaintiffs excepted.

The city had paid the full amount of the work of 1854 to an assignee of Scofield, whose assignment was executed subsequently to the plaintiffs' order.

The referee's findings stated the material parts of the

foregoing facts; and upon the points principally litigated, it was in the following words: "That when said order (of the plaintiffs) was delivered to said comptroller, it was understood *by the plaintiffs and the said comptroller* that it was drawn upon the indebtedness of the said city to said Scofield for work done and materials furnished under said contracts of 1856; and it was agreed between the said plaintiffs and the said comptroller acting for the city, that the balance of said indebtedness should be applied upon said order after paying any previous orders given by said Scofield, and also paying said Scofield thereof the sum of about $100."

*S. N. Holmes*, for the appellants.

*A. J. Parker*, for the respondent.

DENIO, Ch. J.    There can be no doubt but that the order which the plaintiffs obtained from Scofield, accompanied with the evidence that it was given for value, was a valid equitable assignment of the demand which Scofield had against the city.    The delivery of the order to the comptroller, had there been nothing to qualify it, was, under the circumstances, sufficient notice of the assignment to charge the city.    These points were decided in *Field* v. *The Mayor, &c., of New York* (2 Seld., 179), and were reaffirmed in *Hall* v. *The City of Buffalo*, at the September Term of the last year.

The terms of the order were sufficiently broad to embrace any indebtedness of the city to Scofield, which would fall within the descriptions of "plank road and sidewalk accounts," and there appears to be no doubt but that all the work and materials in respect to which the debt incurred in 1854, as well as that in 1856, arose, was of that character.    Although the order was not a contract to which the defendant was a party, it was evidence in writing of the plaintiffs' title to payment out of the moneys referred to in it, and was hence within the protection which the law of evidence affords to written instruments, and which precludes their being varied or contradicted by parol.

It was quite competent, however, for the plaintiffs to waive any of the rights which they acquired by the assignment.

If, at the time of delivering the order to the comptroller or afterwards, they consented that Scofield might, notwithstanding, receive any part of the money which the city owed him, and so informed the proper officer of the city, and the latter, before any countermand or retraction of the license thus given, paid Scofield accordingly, such payments being within the scope of the permission, would be valid payments, and the plaintiffs could, upon the plainest principles of justice, be precluded from questioning them, and from claiming that the money should be again paid to them. The evidence on the part of the defendant, and the finding of the referee bring the payment of the $110 made to Scofield within those principles, and were a perfect answer to so much of the plaintiffs' claim upon the fund.

I am furthermore of opinion that they might limit and restrain the rights which he acquired by the order, by an arrangement with the city through its proper officers. The city was not a party to the order, which was a transaction wholly between the plaintiffs and Scofield. If notice had not been brought home to it, of its contents, it would have been at liberty to pay to Scofield the whole amount which they owed him. But after notice, such payment would be a violation of the equitable rights which the plaintiffs had acquired by means of the order and the notice. Notwithstanding the general terms of the order, it was competent for Scofield and the plaintiffs to have agreed that the former should retain the control of that part of his entire claim against the city, which arose in the year 1854. But if the plaintiffs, in consequence of such an agreement, or without having made one, informed the accounting officers of the city that such were the terms of the arrangement, and they or their successors had acted upon it, the plaintiffs would have been bound. This is what the defendant offered to prove by the evidence, which was excepted against by the plaintiffs' counsel; and the evidence tended to prove it. Mr. Willisten swore that Mr. Parker, one of the plaintiffs who acted in their behalf in the business, claimed for work in 1856, and nothing more, and upon that and some other

evidence having a similar tendency, the referee has found that it was understood between the plaintiffs and the comptroller of the defendant, that the order was drawn upon the indebtedness of 1856.

The testimony was not very precise or direct, but it had a legal tendency to show that the notice which the defendant's officers had of the order, was qualified by a declaration in substance that it was not intended to embrace, and was not claimed to embrace the work of 1854. In consequence of this, as we are to presume, the defendant recognized the subsequent assignment by Scofield to another party, of what was due to him for that work. It may be considered to have been paid by the plaintiffs' permission. The defendants have paid all that they owed for the entire work and materials furnished by Scofield according to his direction and appointment, as interpreted and made known to them by the plaintiffs. It is not for us to judge of the relative weight of the evidence produced by the defendant and by the plaintiffs. That of the defendant was competent, and tended in some degree to establish the position on which it relied, and the referee, to whom that question was by law committed, has found it to be satisfactory, notwithstanding the contradictory evidence. We cannot interfere with that determination.

It was no answer to this view that the plaintiffs and Scofield agreed at the time the order was signed, that if the indebtedness of 1856 should not prove sufficient, the amount should be paid out of that of 1854. The order, as I have assumed, embraced all the indebtedness of both years, and the evidence would not have improved the plaintiffs' case. If this were otherwise, the proof would have been incompetent upon plain rules of evidence. There was no inconsistency between the ruling which excluded this evidence, and that by which the effect of the order was limited by the qualification which the plaintiffs voluntarily annexed to it.

I am in favor of affirming the judgment of the Supreme Court.

All the judges concurring,

Judgment affirmed.