BENNETT MUNGER, Respondent, *v.* HARRISON SHANNON, Appellant.

One D. gave to the holders of a promissory note made by her a writing directed to defendant, her partner, which, after requesting him to pay to the holders the amount of the note, contained this clause: "And deduct the same from my share of the profits of our partnership." In an action upon an acceptance thereof, *held* (EARL, C., dissenting), that the writing was not a bill of exchange but an equitable assignment of sufficient of the profits to pay the note, which was irrevocable as soon as assented to by defendant, so far as to require him to appropriate the profits, if any, to its payment; but that he was not absolutely bound to pay, and the absence of profits was a good defence.

Where an answer presents a material issue, it cannot be held as frivolous upon summary application for judgment, as prescribed by the Code, in case of frivolous pleading (§ 247), although there may be allegations therein which are immaterial.

A judgment cannot be given against a defendant because of the frivolousness of his answer, where the complaint does not state facts sufficient to constitute a cause of action.

As the judge in such case has no jurisdiction to adjudge the answer frivolous and to direct judgment, the objection can be raised upon appeal to this court, although not taken in the court below.

(Argued May 27, 1874; decided September term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment and order of Special Term, granted upon summary application for judgment against defendant, under section 247 of the Code, on the ground of the frivolousness of the answer.

The complaint alleged in substance that Livonia A. Gulick, on the 31st day of December, 1868, at Starkey, Yates county, made her promissory note, by which, for value received, she promised to pay to her own order $2,000, three months after date, at the Central National Bank in the city of New York. There were additional allegations to the effect that the note was indorsed by Nathan Randall and Herrick Munger, and thereupon discounted and held by Wilkin & Hair, bankers, at Dundee, in the same county. That on the 26th day of January, 1869, and before the note became due, L. A. Gulick, by her agent, made her bill of exchange, addressed to the defendant, as follows: "Mr. Harrison Shannon. You will please pay to Messrs. Wilkin & Hair the amount of a note for $2,000, dated December 31st, 1868, *and deduct the same from my share of the profits of our partnership business in malting.* Note made by myself as principal to the order of myself, and indorsed by Nathan Randall and Herrick Munger. L. A. Gulick, per E. Gulick. January 26, 1869." That said bill or order was thereupon duly transferred and delivered to the said Wilkin & Hair; and afterward, on the 6th day of February, 1869, the defendant duly accepted said bill or order by writing upon the back of it these words: "Accepted February 6, 1869. H. Shannon;" and therefore became liable upon said bill or order as accepted. It was further alleged that before the commencement of the action the note and bill, or order, were transferred to the plaintiff for a valuable consideration;

that the note was due and payable before action brought.; and that payment of it, as well as of the bill, etc., was demanded of the defendant, but that no part of the same, or either of them, had ever been paid; and that there was due to the plaintiff thereon $2,000, with interest from April 3, 1869.

The defendant, in his answer, alleged that, after the acceptance of the order mentioned in the complaint, and before the note matured, L. A. Gulick countermanded the order, and directed the defendant not to pay it; and that before such maturity she requested the holders not to call upon the defendant to pay; and that she then made arrangements to take up and pay the note at its maturity; and that said note was either paid by the maker at maturity or renewed by another note for the same amount, with the same indorsers; and that the note was thereby paid by the maker. It was further stated that the note and order were transferred to the plaintiff long after the note became due, and after it had been paid as before mentioned; and that the defendant was not called upon nor requested to pay until after the transfer.

In a second count of the answer the defendant alleged that, at the time of accepting the order, the defendant and L. A. Gulick were copartners in the business of purchasing barley and making malt and selling it, under a written agreement of the date of August 14th, 1868; and that this agreement was to extend for one year, which was well known to Wilkins & Hair, holders of the note, when the order was received. At the time of the acceptance of the order there were no profits of the partnership in the hands of the defendant belonging to L. A. Gulick, and the partnership remains unsettled; and L. A. Gulick, upon an accounting, will be found largely indebted to the defendant.

In a third count the answer alleged that before the note became due L. A. Gulick countermanded the order, and directed the defendant not to pay it; and requested Wilkins & Hair not to require payment of it. It was also stated that on the 26th day of August, 1870, and before the transfer of

the note and order to the plaintiff, L. A. Gulick sold and transferred to Nathan Randall all her interest in the partnership effects, and that Randall is still the owner and holder of that interest.

*David B. Prosser* for the appellant. The order given by defendant's partner lacked the necessary elements to constitute a bill of exchange. (Chitty on Bills [9th Am. ed.], 152, *n.* 1; *Cook* v. *Satterlee*, 8 Cow., 108.) She had a right to recall and countermand her order before actual payment of the note. (Chitty on Bills [9th Am. ed.], 350; *Stewart* v. *Fry*, 1 Moore, 75; *Gibson* v. *Minet*, 1 R. & M., 68; 21 C. L. R., 381.) Defendant was the mere agent of her partner to pay her note, and her agency could be revoked at any time before actual payment of it. (*Taylor* v. *Lindey*, 9 East, 49.)

*E. G. Lapham* for the respondent. The instrument in suit was a bill of exchange and defendant can be sued as acceptor. (Chitty on Bills [9th Am. ed.], 138; Edw. on Bills, 143, 144; *Leonard* v. *Mason*, 1 Wend., 522; *Kelly* v. *Mayor, etc.*, 4 Hill, 263; *Skillen* v. *Richmond*, 48 Barb., 428; *Lowrey* v. *Steward*, 3 Bosw., 505; affirmed, 25 N. Y., 239; *Harris* v. *Clark*, 3 Conn., 93, 115, 250.) The acceptor is the principal debtor, and his acceptance is evidence of value received by him from the drawee. (Edw. on Bills, 430; 5 Hill, 413; *Pope* v. *Luff*, 7 id., 577.) The drawer of the order could not countermand it, after acceptance, without the consent of the holders. (*Lunt* v. *Bk. of N. Am.*, 49 Barb., 221, 229; *Schneider* v. *Irving Bk.*, 30 How. Pr., 190.) It is not competent for defendant to attack the complaint in a case like this. (*Corn Ex. Bk.* v. *W. Tr. Co.*, 15 Abb., 319, note.) Where a judgment has been ordered striking out an answer as frivolous, if the answer does not establish a good defence the order should be affirmed on appeal, although the answer may not be considered frivolous. (*Martin* v. *Kanous*, 2 Abb., 327; *E. R. Bk.* v. *Rogers*, 7 Bosw., 494; *Griswold* v. *Laverly*, 12 Leg. Obs., 316.)

DWIGHT, C. The question in the case is, whether the answer formed a valid defence to a sufficient cause of action set forth in the complaint.

The leading idea of the pleader in drawing the first answer appears to have been, that the order drawn by L. A. Gulick was countermanded by her before the note matured. Of course, that would be no valid defence to an action upon the instrument were it a bill of exchange and in the hands of a holder for value. The defendant claims that the instrument was not a bill of exchange, but a mere order, and that it rested upon no consideration, and was, in fact, a mere direction to an agent, subject to countermand; and further, that the note itself was either actually paid, or renewed in such a manner as to be in substance discharged. The second answer was based on the idea that the instrument was an assignment of a certain amount of such profits, or an order to pay out of such profits as L. A. Gulick might have realized in a specified business, and that there were no such profits, whereby the order became nugatory.

Under this pleading it will be necessary to consider whether the instrument on which the action is brought is a bill of exchange. A bill is an order drawn by one person on another to pay a third a certain sum of money, absolutely and at all events. Under this definition the order cannot be paid out of a particular fund, but must be drawn on the general credit of the drawer, though it is no objection, when so drawn, that a particular fund is specified from which the drawee may reimburse himself. The difficulty is in determining whether the bill is to be paid out of the fund or not. The cases are very numerous, and do not appear to proceed on any very well defined distinction. The true test would seem to be whether the drawee is confined to the particular fund, or whether, though a specified fund is mentioned, he would have the power to charge the bill up to the general account of the drawer, if the designated fund should turn out to be insufficient. In the final analysis of each case, it must appear that the alleged bill of exchange is drawn on the general

credit of the drawer. For example, if he were an accommodation drawer, it must be of such a nature that the amount paid under it could be charged against him as a debt, or if the transaction were business paper, it must be of such a character as to be entered as a debit, on the debtor side of the account.

The remarks in *Dawkes* v. *De Lorane* (3 Wils., 207), are worthy of approval: "The instrument or writing which constitutes a good bill of exchange is not confined to any certain form, or set of words, yet it must have some essential qualities, without which it is no bill of exchange; it must carry with it a *personal* and certain credit given to the drawer, not confined to credit upon any *thing* or *fund;* it is upon the credit of a person's hand, as on the hand of the drawer, the indorser, or the person who negotiates it; he to whom such bill is made payable, or indorsed, takes it upon no particular event or contingency, except the failure of the general personal credit of the persons drawing or negotiating the same." Whatever is said of a bill here is equally applicable to a promissory note. Under this rule, an order drawn payable "out of one's growing subsistence" is not a good bill (*Josselyn* v. *Lacier*, 10 Mod., 294); nor one payable "out of rents" (*Jenney* v. *Herle*, 2 Lord Raym., 1361); nor out of money in the hands of ——; "nor out of a certain payment when due." (*Haydock* v. *Lynch*, 2 Lord Raym., 1563.) On the other hand, the statement of a particular fund in a bill of exchange does not vitiate it, if it be inserted merely as a direction to the drawee how to reimburse himself. Thus, an order requesting the defendant to pay to the plaintiff, or order, £9, 10s., "as my quarterly half-pay, to be due from the twenty-fourth of June to twenty-seventh of September next, by advance," was held to be a bill of exchange. The court said: "The mention of the half-pay is only by way of direction how he shall reimburse himself, but the money is still to be advanced on the credit of the person." (*Macleod* v. *Snee*, 2 Strange, 762.) The direction in the case at bar is equivalent to an order to pay out of the profits.

It is to *deduct* the amount paid from the drawer's share of "the profits." This is equivalent to a direction to subtract the amount from a particular fund. If the language had been "please pay Wilkes and Hare $2,000 out of my share of the profits of the partnership," it would have been a clear case of assignment and not a bill of exchange. The actual direction was in substance the same. *Cook* v. *Satterlee* (6 Cowen, 108), is in point. The words there were: "Ninety days after date pay plaintiff or bearer $400, *and take up their note* given to Wm. and H. B. Cook for that amount, dated April 19th, 1825." On demurrer it was held that this was not a bill of exchange. The words "pay *and* take up," etc., were held to be equivalent to pay *on* taking up. Applying the same construction to the present case, "pay *and* deduct" would be equivalent to "pay *on* deducting," or "pay *by* deducting." Either construction must take away negotiability. *Cook* v. *Satterlee* is not at all weakened by *Leonard* v. *Mason* (1 Wend., 522). The opinion is given by the same judge in both cases. The language in *Leonard* v. *Mason* was, "pay a specified note, and hold it against me in our settlement." The court said the note was thus referred to merely to ascertain the amount. The language was equivalent to the words "charge to my account." In *Leonard* v. *Mason* there was no independent act to be performed other than paying the note. In *Cook* v. *Satterlee*, and in the case at bar, there are two wholly distinct acts to be done, besides payment; in the one to take up a note, and in the other to deduct from profits of a firm. The order, accordingly, is not drawn on the general credit of the drawer. (*Lowery* v. *Steward*, 25 N. Y., 239.) The order there was: "Please pay to the order of Archibald H. Lowery the sum of $500 on account of twenty-four bales cotton shipped to you as per bill of lading, by steamer Colorado, inclosed to you in letter." It was held that this was not a bill of exchange, requiring acceptance to bind the drawers, but a specific draft or order upon a particular fund. (Pp. 242–244; *Morton* v. *Naylor*, 1 Hill, 583; *Parker* v. *City of Syracuse*, 31 N. Y., 376.) The

present order, it should be observed, is payable out of an uncertain fund, from profits, and of course, none may be realized. This fact, of itself, deprives it of an element essential in a bill of exchange, which is, that it be payable absolutely, and not upon a contingency. (*Cook* v. *Satterlee*, 6 Cow., 108; *Worden* v. *Dodge*, 4 Denio, 159; 1 Parsons on Notes and Bills, 42.)

I think that the true construction of the present order is, that it was an equitable assignment of a certain amount of the profits of the business of L. A. Gulick. (*Lowery* v. *Steward, supra; Cutts* v. *Perkins*, 12 Mass., 206; *Row* v. *Dawson*, 1 Ves. Sen., 331; *Lett* v. *Morris*, 4 Simons, 607; *Clark* v. *Adair*, cited in 4 Term, 343; *Vreeland* v. *Blunt*, 6 Barb., 183; *Wells* v. *Williams*, 39 id., 567; *Parker* v. *City of Syracuse*, 31 N. Y., 376.) *Cowperthwaite* v. *Sheffield* (3 N. Y., 243), is not opposed to this view, since in that case there was nothing on the face of the bills to indicate that they were drawn on a specific fund, but they were in the ordinary form of bills of exchange. (P. 248 of the report.) The same remark is to be applied to *Harris* v. *Clark* (3 N. Y., 93).

Considering the transaction as an equitable assignment, it was irrevocable in equity as soon as it was delivered to the holders, and at law as soon as it was assented to by the defendant, so far as to require him to appropriate so much of the profits as were equal to the amount of the note, to its payment. *Menomy* v. *Ferrers*, 3 J. R., 71–83; *Peyton* v. *Hallett*, 1 Caines, 363; *Canfield* v. *Monger*, 12 J. R., 346; 2 Story on Eq. Jur., § 1044.) The principle of these cases, that in equity the fund is held in trust for the creditor, and that he has an equitable lien upon it for the amount of his debt. The doctrines of consideration applicable to contracts and to rights to bring actions upon them, have no relation to a case of this kind, where the sole inquiry is, whether there has been such a dealing between the parties as to appropriate the fund to the use of the creditor. Even in a court of law though an order of this kind might be revocable until assented to, yet, after assent by the parties, the creditor's rights would

become so fixed that the drawer could no longer revoke his direction. (*Williams* v. *Everett*, 14 East, 581.) In this case, which was considered with much care, bills had been remitted to bankers with directions to appropriate the proceeds to the payment of bills not yet due, held by the plaintiff and others. The bankers did not assent to the direction. The court held that on this account the plaintiff could not maintain an action *at law*, for money had and received to the plaintiff's use. Lord ELLENBOROUGH said: "It is entire to the remitter to give and countermand his own directions respecting the bill as often as he pleases, and the persons to whom the bill is remitted may still hold the bill till paid, and its amount when received, for the use of the remitter himself, until, by some engagement entered into by themselves with the person who is the object of the remittance, they have precluded themselves from so doing, and have appropriated the remittance to the use of such person. *After such a circumstance, they cannot retract the consent they may have once given, but are bound to hold it for the use of the appointee.*" (P. 397.)

The only defence, then, open to the defendant under a properly drawn complaint, would be to show that there were no profits. If there was a fund in his hand from which to pay the note, he was bound to appropriate it in the manner designated. This was the meaning of his acceptance, which he cannot retract.

The remaining inquiry is, whether the want of profits was a sufficient defence. The order was, in substance, to pay from the profits of the business of Gulick & Shannon. The answer inartificially, but in substance, alleges that there were and have been no such profits. The complaint and answer, taken together, disclose all the facts; and they must be construed as a whole. (*Bate* v. *Graham*, 11 N. Y., 237.)

It has already been shown that this was an order payable on a contingency. The acceptance partakes of the same qualified character. Thus, it is said in 1 Parsons on Notes and Bills, 304: "An absolute acceptance of an order payable

on a contingency is the same, in legal effect, as if the instrument had all the requisite certainties of a bill of exchange with a conditional acceptance. Thus, an absolute acceptance of an order payable in the goods of the drawer, or the proceeds thereof, amounts to an agreement to *pay the order according to its tenor*, and, in order to recover on such acceptance, the holder must aver in his complaint and prove that the drawer had in his hands either the goods specified or the proceeds." (*Atkinson* v. *Manks*, 1 Cowen, 691; *Newhall* v. *Clark*, 3 Cush., 376.) Compliance with the condition is in the nature of a condition precedent; and if the condition is not complied with the acceptance is of no effect. (*Mason* v. *Hunt*, 1 Doug., 297; *Browne* v. *Coit*, 1 McCord, 408.)

As the absence of profits was the material point of the defence, and was alleged in the answer, judgment should not have been given against the defendant for frivolousness, although there may be a number of allegations in it which are immaterial. It is not to be treated as frivolous unless bad as a whole. (*Strong* v. *Sproul*, 53 N. Y., 497; *Thompson* v. *Erie Railway*, 45 id., 468.)

Moreover, the plaintiff's complaint did not state facts sufficient to constitute a cause of action. It should have been framed upon the theory that the order amounted to an equitable or legal assignment of the profits, and that there had been, since the issuing of the order, sufficient profits in the defendant's possession from which to pay the note. The defendant might have taken issue on these allegations. It is settled in this court that judgments cannot be given against the defendant for the frivolousness of his answer, so long as the complaint does not itself disclose facts sufficient to constitute a cause of action. (*Van Alstyne* v. *Freday*, 41 N. Y., 174.)

It may be said, however, that this objection should have been raised in the court below; and as it was not, it cannot now be taken advantage of. I do not think that this rule applies to the present case. The judge, at chambers, has no

jurisdiction, on motion, to adjudge an answer to be frivolous unless the complaint itself is sufficient. His power is derived wholly from the Code. If the objection had been raised in the lower court the only effect would have been to allow the plaintiff to amend his complaint, and that would necessarily prevent him from taking judgment until further opportunity is given to the defendant to answer. That will, practically, be the result of the present decision. If the judgment is reversed the plaintiff may amend his complaint, whereupon, the defendant will have an opportunity to raise an issue on the point whether there were any profits from which the amount specified in the order could be deducted.

The judgment of the Supreme Court should be reversed.

All concur; except EARL, C., dissenting. LOTT, Ch. C., concurs on the ground that the answer should not have been held frivolous.

Judgment reversed and motion denied.