MILLS W. BARSE, Respondent, *v.* HENRY J. MORTON and Others, Appellants.

*Orders for the delivery of oil, drawn upon one holding it as bailee — when the latter is bound to deliver it to the assignee — liability of the drawer in case he revokes the order — evidence — when proof of a custom is admissible as showing the intention of a person acting in accordance with it.*

In October, 1881, one Dilworth sold and transferred several parcels of oil lands, upon which producing wells were located, to the defendants for 59,000 barrels of oil, of which 10,000 barrels were delivered on that day, and orders were given for the other barrels, drawn on the United Pipe Line Company, each order being for 1,000 barrels, in the following form:

" October 20, 1881. The United Pipe Lines. Pass to credit of Charles R. Dilworth one thousand barrels crude petroleum, subject to your customary rules and regulations, and charge to the account of H. J. Morton & Co."

When the orders were made the defendants had no oil in store, but the oil produced from the lands after the purchase was stored by them with the company. Before the maturing of the orders and after Dilworth had indorsed and parted with them, of which fact the defendants were informed, the company, with the consent of the defendants, delivered the oil to Dilworth.

Upon the trial of this action, brought by the plaintiff, who had purchased six of the orders, for a valuable consideration and before their maturity, from one Wiser, to whom they had been delivered by Dilworth, after having been indorsed by him in blank:

*Held,* that as the evidence was such as to justify the jury in finding that Dilworth intended to sell and transfer his title to the orders to Wiser, and delivered them to him to carry out that purpose, and that Wiser had transferred them to the plaintiff for a valuable consideration, a judgment in his favor should be affirmed.

Upon the trial the plaintiff was permitted to prove that it was the custom of banks and traders, dealing in this class of orders drawn on the Pipe Line, to purchase the same when indorsed in blank by the payee; and that it was also the custom of the Pipe Line to deliver the oil to the holder on their presentation, thus indorsed, without other evidence of the holder's title.

*Held,* that the evidence was admissible as bearing upon Dilworth's intention when he indorsed and delivered the orders to Wiser.

*Semble,* that the mere naked possession of the orders indorsed by the payee in blank, without other evidence that the payee intended to part with his title, would not be sufficient to prove a title to the same in the holders as they were not negotiable instruments.

APPEAL from a judgment entered upon a verdict in the plaintiff's favor for damages and costs, $6,738.81, and from an order denying the defendant's motion for a new trial made upon the minutes of the justice before whom the action was tried.

The legal proposition presented by this appeal arises upon two exceptions, one taken to the refusal of the court to grant a nonsuit and the other to the denial of the defendants' motion at the close of all the evidence asking the court to direct a verdict in the defendants' favor. In October, 1881, Charles R. Dilworth was the owner of and interested in several parcels of oil lands, upon which were located producing wells, which he sold and transferred to the defendants, and they agreed to pay therefor 59,000 barrels of oil. Of this amount they delivered on the day of sale 10,000 barrels, and for the balance they made and delivered to Dilworth orders on the United Pipe Line Company, all payable in the future, each for 1,000 barrels, and in the following form : " Bradford, Pa., October 20, 1881. The United Pipe Lines : Pass to credit of Charles R. Dilworth one thousand barrels crude petroleum, subject to your customary rules and regulations, and charge to the account . of H. J. Morton & Co." At the time of the making and delivery of the orders the defendants had no oil in store. The oil produced from the lands after the purchase, was stored by the defendants with the Pipe Line Company. Six of the orders, being those in suit, were made payable on the 20th of October, 1882. Before these orders were payable Dilworth indorsed the same in blank, and they passed into the hands of C. B. Wiser, who, before their maturity, sold and delivered them to the plaintiff. On the day they were made payable they were presented to the Pipe Line Company and the oil demanded, which was refused. Before that time the company, with the consent of the defendants, delivered oil in this amount to the payee, who, at that time, had indorsed and parted with the possession of the orders, of which the defendants were informed. The plaintiff purchased the orders from Wiser before their maturity, paying therefor a valuable consideration.

*Cary & Rumsey*, for the appellants.

*J. R. & M. B. Jewell*, for the respondent.

BARKER, J.:

The orders were founded upon a good consideration, and they, therefore, constituted an equitable assignment of the oil to Dilworth, although they were never accepted by the Pipe · Line

Company, on which they were drawn. It was the duty of that company, acting as the bailee of the owner of the oil, to deliver the same to Dilworth on being notified of the transfer. After the orders were delivered, the defendants could not effectually revoke the same without the consent of the holder. The cases establishing the rights of the parties under instruments of this character are decisive. (*Morton* v. *Naylor*, 1 Hill, 583; *Parker* v. *City* of *Syracuse*, 31 N. Y., 376.) The case of *Alger* v. *Scott* (54 N. Y., 14), cited by the appellants' counsel, does not support his position, but affirms the rule as stated where the order is based upon a good consideration. The circumstance that the oil was not in the hands of the drawee at the time of the orders does not change the rule; for, when oil applicable to the payment of the orders passed into the possession of the drawee by the direction of the defendants, the orders became effective and the equitable transfer was accomplished. The parties to the agreement anticipated that the oil produced from the wells located on the lands, or other oil which should be secured by the defendant from other sources, would be delivered to the Pipe Line for the purpose of meeting the orders and thus discharging the drawers indebtedness to Dilworth. As the oil had not been produced and delivered to the Pipe Line Company when the transaction took place, the orders could not operate, *eo instanti*, to transfer the title to the oil; but they, nevertheless, created an equity which would seize hold of the oil as soon as it passed into the custody of the Pipe Line. (*Field* v. *Mayor*, 2 Seld., 179.) If Dilworth had remained the owner of the orders, it is clear he would have had a perfect right of action against the defendants in case of their non-payment on due presentation. After Dilworth had indorsed the orders and delivered them to Wiser, the defendants consented that the Pipe Line Company might deliver to Dilworth the quantity of oil mentioned in the several orders in suit.

It is conceded by the defendants that the judgment should be sustained, if, by the evidence, a case was made fairly establishing that Dilworth had transferred his title to the orders and the plaintiff had acquired the same. We think that the evidence tended to prove a state of facts that justified the jury in reaching the conclusion that Dilworth intended to sell and transfer his title to the orders to Wiser, and, to carry out that purpose, delivered the same

to him, and that the latter disposed of the same to the plaintiff for a good consideration. Before the maturity of the orders, Dilworth indorsed the same in blank and caused them to be delivered to Wiser. It appears from the evidence that when the lands were sold, Wiser had an equitable interest therein, and was at that time engaged in managing and operating the wells located thereon, and was present and participated in the negotiations which resulted in the sale. We think this evidence indicates that it was the intention of Dilworth to part with his title to these orders and to transfer the same to Wiser. It does not appear that Dilworth, in any manner, had discharged his obligation to Wiser, arising out of the latter's equitable interest in the lands sold and conveyed to the defendants. It is fairly established that Dilworth intended to part with his title. The mode and manner of making the transfer was sufficient for that purpose. The holder of the orders would be authorized to write a formal assignment over the indorser's signature. (*Dunn v. Commercial Bank*, 11 Barb., 580.)

We do not intend to hold that the mere naked possession of the orders indorsed by the payee in blank, without other evidence that the payee intended to part with his title, would be sufficient to prove a title to the same in the holder. They are not negotiable instruments. The plaintiff was permitted to prove that it was the custom of banks and traders dealing in this class of orders drawn on the Pipe Line to purchase the same when indorsed in blank by the payee. And that it was also the custom of the Pipe Line to deliver the oil to the holder on their presentation, thus indorsed, without other evidence of the holder's title. This evidence was objected to by the defendants as incompetent and immaterial. We think it was competent as bearing upon Dilworth's intention when he indorsed and delivered the orders to Wiser. It is disclosed by the case that Dilworth was familiar with this custom. It also appears by the defendants' proofs that it was Dilworth's intention that the orders should be presented by Wiser to the Pipe Line Company for payment at their maturity, but, as he, Dilworth claims for his own account. If the evidence was competent for the purpose indicated, then it was properly received. It was not competent to prove the custom for the purpose of showing that by the force and effect of it the payee could be deprived of his title with-

out his consent, or that the same could be construed in any other manner than that required by law.

The main dispute on the trial was, whether the orders were delivered to Wiser as assignee and owner, or as the agent of Dilworth, to present them to the Pipe Line Company and receive the oil on the payee's 'account. The evidence tended to support both contentions, and we are of the opinion that the verdict of the jury was conclusive against the defendants on that question. In his charge the learned trial judge presented that question to the jury and instructed them that the defendants would be entitled to a verdict in their favor unless they found that Dilworth intended to transfer the title to the orders to Wiser, and if they found he did so intend, then their verdict would be for the plaintiff. Neither party excepted to the charge and the case was submitted to the jury upon that single issue.

Judgment and order should be affirmed, with costs.

SMITH, P. J., HAIGHT and BRADLEY, JJ., concurred.

Judgment and order affirmed.