Curia, per SAVAGE, Ch. J.
The first section of our statute for suppressing immorality, (2 R. L. 193,) enacts, that there shall be no traveling, servile labor or working, shooting, &c., on the first day of the week, commonly called Sunday. The fifth section enacts, that no person, upon the first day of the week, commonly called Sunday, shall serve or execute, or cause to be served or executed, any writ, process, warrant, order, judgment or decree, except in cases of treason, felony or breach of the peace; but that the service shall be void.
Under this act, it has been decided, that process cannot be issued on Sunday, and that process issued and put into the hands of an officer, is not a commencement of the suit on that day. (12 John. 178.) That a writ of inquiry can not be executed on Sunday, (15 John. 179,) though a verdict of a jury' may be received on that day. (Ibid, and 15 John. 119.) ,, And, carrying the spirit of the statute into the practice :of the courts, it has been decided that a notice cannot be served on Sunday. (20 John. 140.)
Sunday is stated in all the books, to be dies non juridicus ; not made so by the statute; but by a canon of the church, incorporated into the common law. According to the history given by Lord Mansfield, in the case of Swan *29 v. Broome, (3 Bur. 1597; 2 Bl. 526, S. C.,) anciently, the ^courts -’of justice did tit on Sunday, ' It appears ¡by Sir Henry Spelman’s original of the term, that the “ ehristians at the first used all days alike for -the hearing of causes, not sparing (as it seemeth) the Sunday itself.” They .had two reasons for it: one was in opposition to the heathens who were 'superstitious about the observation of days and times, conceiving some to he ominous and unlucky, and others to'be lucky; and therefore ehristians laid aside all observance of days. A second reason they had, was, that by keeping their own courts always open, they prevented the Christian suitors from resorting to the heathen courts. But in the year 517, a canon was made, “ Quod hullus episcopios vel infra positus die .dominico causees judicctre preesumat:" and this canon was ratified in the time of Theodosius, wild fortified it with an imperial constitution; Solis dee (quen dominicumreCte ditere majores) omniuríi omnino litium et negotiorwm quiescat intentio.” Other canons were made in whieh vacations were appointed. These and other canons-and constitutions, were received 'and adopted, by the Saxon kings of England. They were sail -confirmed by William the conqueror and -Henry the second-; ánd so became part of the common law of England.
í" Various decisions have been made in the English-courts, as to what may or may not be done on Sunday. In the 20 Jac. 1, an information appeared by the record to have been exhibited in court ón -Sunday, which the court held good under a particular law; but it was at the -same time held, that Sunday was not dies jicridicus, for awarding judicial process, nor for entering any judgment of record. Writs were formed returnable on Sunday, when the courts might sit on that day; and the forms remain, though no business can be done till Monday. In Mackaley's Case, (9 Co. 66, Cro. Jac. 279, S. C.,) in the 9 Jac. 1, it'was resolved, that ho judicial act ought to be -done on the Sabbath, but ministerial acts may be lawfully executed tin -that day, In Comyns v. Boyer, (Cro. El. 405,) it wás said, that a fair hblden upon Sunday, is well enough; although by staitute 27 H. 6, ch. 5, there is a penalty inflicted upon "*the *30 party that sells upon that day; but it makes it not to be void. This doctrine is denied in Drury v. Defontaine, (1 Taunt. 135,) where the court say, the law is since-changed; and if any act is forbidden under a penalty, a contract to do it is now held void. In this case, it was held that the sale of a horse on Sunday was valid; not being -contrary to the common law; nor prohibited by the statute 29 Oh. 2, which enacts that, “ no person whatsoever shall do or exercise-any worldly labor,-business, or work of their ordinary callings upon the Lord’s day.;” and the sale of the horse not being the ordinary calling of the plaintiff, the contract was held valid. Prinsor's Case, (Cro. Car. 602,) was before the statute 29 Car. 2. In that ease, Prinsor, an officer, was punished for arresting one Hazlewood, as he came from divine service; because he might have -arrested him any day of the week. This shows that the court thought it highly improper to serve process on that day, unless from necessity, though such arrests were then not prohibited by-statute.
Since the 29 Car. 2, there are many decisions in the English books, in which the service -of process, -and other acts in the course of judicial proceedings, are held unlawful and void by virtue of that statute.
By the common law, then, it appears, all judicial proceedings are prohibited. All -other acts are lawful unless prohibited by statute. Our statute enumerates traveling, servile labor and working, together with various pastimes; but leaves many acts lawful, which are notwithstanding highly offensive to religion and morality. The making a promissory note has been held unlawful in Connecticut; (1 Root, 474:) but in Massachusetts, it is lawful. (10 Mass. Rep. 312.) If a note fall due on Sunday, in Connecticut it must be paid on Monday; in this state on Saturday; but in neither on Sunday.
The making of .an award cannot be included in the terms, a traveling, servile labor, or working;” and is, there* fore, not prohibited by statute. But, in my judgment, it is a judicial proceeding. It is clearly within the terms *31 “ litiurn et *negotiorum,” mentioned in the constitution of Theodosius.
But we have authority, at home to this point. In Barlow v. Todd, (3 John. 368,) it is said the arbitrators are judges chosen by the parties themselves; and,their awards are not examinable in a court of law, unless the' condition is to be made a rule of court, and then only, for corruption or gross partiality. ■
In Van Cortland V. Underhill, (15 John. 416,) Yates, justice, speaking of awards, says, “it certainly would be a dangerous innovation to place them on a footing with the verdict of a jury. They are, and ought to be of a more binding force between the parties.” “ It (an award) is a decision of a tribunal of the parties’ own choice and election.” This doctrine - is fully supported by English adjudications. . Arbitrators are not only jurors to determine facts, but judges to adjudicate as to the law; and their award when fairly and legally made, is a judgment conclusive between the parties, from which there is no appeal. .
I am, therefore, of opinion that the award of the arbitrators was void; being made and published on Sunday. As the case is subject to ■ the opinion of the court, the defendant is entitled to judgment.[1]
Judgment for the defendant.

 At common law,-Sunday was always considered dies non jurídicas as to process, though deeds and other acts not in the ordinary way of business, may be executed on that day. But process by original, when a general return day fell on Sunday, might be returnable nominally on that day. At common law, if an act be stipulated to be, or is to be done, on a day of a month which happens to fall on a Sunday, the party has the next following day to perform it; and the legislature and the courts appear to have considered such allowance of the following day as proper. But.by the •mercantile law, and by statute, as regards bills of exchange and promissory notes, if payable on a Sunday, they become due the day before; though if dishonored, notice need not be given until the following Monday. ’ -And if a letter giving notice of the dishonor, be received on Sunday, it need not be opened until the Monday, and it is to be considered as only having been received on the latter day. See Chitty’s Genl. Pr., vol. 3, p. 104. See N. Y. Dig., vol.4, tit. Sunday; Waterman’s Amer. Ch. Dig., vol. 1, tit. Award; N. Y, Code of 1851, sect. 407.