MARY SCHMITTLER, Appellant, *v.* ADAM SIMON, Respondent.

An administrator or executor who makes, indorses or accepts negotiable paper is personally liable thereon, although he adds to his signature the name of his office ; he cannot bind the assets of the deceased by his contracts.

The mere mention of a fund in a draft does not necessarily deprive it of the character of negotiable paper; it is only where there is a direction, express or implied, to pay it from the fund, and not otherwise, that it will have that effect.

A draft drawn upon an executor of the estate of the mother of the drawer contained an absolute direction to pay a fixed sum at a specified date, with interest to the payee or order ; then followed these words, "and charge the amount against me, and of my mother's estate." The draft was accepted by the executor, the word "executor" being added to his signature. In an action upon the acceptance, *held*, that the reference in the draft to the estate was not a direction to pay out of it, but it was simply referred to as a means of reimbursement; that the instrument was valid as a bill of exchange, and that the defendant was liable absolutely and individually.

*Tooker* v. *Arnoux* (76 N. Y. 397), distinguished.

(Argued January 22, 1886 ; decided March 2, 1886.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, made March 21, 1883, which affirmed a judgment in favor of defendant, entered upon an order dismissing plaintiff's complaint on trial.

The nature of the action and the material facts are stated in the opinion.

*Wm. W. Jenks* for appellant. The instrument sued upon is a bill of exchange. (Pothier, Blackstone, Kent, Edwards and Story ; *Luff* v. *Pope*, 5 Hill, 416 ; 1 Pars. on Notes and Bills, 323 ; *Convren* v. *Luddy*, 31 Penn. St. 509 ; 6 B. Monr. 179 ; 4 Den. 358 ; 2 Wheat. 385 ; 3 Shepl. 131 ; 9 Watts, 359 ; Byles on Bills, 245 ; *Mich. Bk.* v. *Stratton*, 3 Abb. Ct. App. Dec. 270 ; Story on Bills, chap. 5, p. 184 ; *Laing* v. *Barclay*, 1 Barn. & Cress. 398.) The word "executor," both in the body of the instrument and after the signature of the acceptor, is

simply *descriptio personæ*, and as the addition did not bind a principal, the acceptor is individually bound. (*Connor* v. *Clark*, 12 Cal. 168 ; *Hill* v. *Bannister*, 8 Cow. 31 ; *Foster* v. *Fuller*, 6 Mass. 758 ; *Thatcher* v. *Dinsmore*, 5 id. 299 ; *Robertson* v. *Banks*, 1 S. & M. 666 ; *Cornthwaite* v. *First Nat. Bk.*, 57 Ind. 265 ; *Mills* v. *Kuykendall*, 2 Blackf. 47 ; *Carter* v. *Thomas*, 3 id. 213 ; *Ranney* v. *Adm. of Johnson*, 8 Wend. 500 ; *Ferrin* v. *Myrick*, 41 N. Y. 316 ; *McEldery & Chapman* v. *McKenzie*, 2 Port. [Ala.] 33 ; *Windom* v. *Bleecker*, 52 Ill. 342 ; *Davis* v. *French*, 20 Me. 21 ; *Tryon* v. *Oxley*, 3 Iowa, 289 ; *Austin* v. *Monroe*, 47 N. Y. 360 ; Pars. on Notes and Bills, 161 ; Story on Bills, § 47 ; Story on Prom. Notes, § 63 ; *Tasso* v. *Church*, 4 W. & S. 346.) Admitting that the consideration of the instrument sued upon is a debt of a testator represented by the defendant, and a legacy or a portion to be due an heir in either case, its acceptance is an admission of assets, and the forbearance to sue would make it a valid individual obligation. (*Johnson* v. *Gardiner*, 10 Mod. 254 ; *Bradley* v. *Heath*, 3 Sim. 543 ; *Davis* v. *Reyners*, 2 Lev. 3 ; *Childs* v. *Morrison*, 2 Brod. & Bing. 462 ; *Liverpool Borough Bk.* v. *Walker*, Zex & Jones, 29 ; *Liskman* v. *Allen*, 3 E. D. Smith, 564.) The promise to pay interest upon the draft sued upon made it, under any contingency, a personal obligation of defendant. (*Sims* v. *Stillwel*, 3 How. [Miss.] 176 ; *Powell* v. *Graham*, 7 Taunt. 581 ; *Childs* v. *Morris*, 6 Eng. C. L. 200 ; Chitty on Cont. 84 ; *Davis* v. *Reyners*, 2 Lev. 3.) The direction at the close of the instrument " and charge the amount against me, and of my mother's estate," is directory between drawer and drawee as to where amount paid is to be charged. (Chitty on Bills, 162 ; Bouv. L. D., tit. Bills of Exch. ; Byles on Bills, 86 ; *McLeod* v. *Snee*, 2 Strange, 762 ; *Coursen* v. *Ledder*, 31 Penn. St. 506 ; *Kelly* v. *Mayor of Brooklyn*, 4 Hill, 263 ; 1 Daniels on Neg. Instr., § 51 ; *Hollister* v. *Hopkins*, 13 Hun, 210 ; *Munger* v. *Shannon*, 61 N. Y. 251 ; *Ridman* v. *Adams*, 51 Me. 429 ; 1 Edw. on Notes and Bills, § 158.)

*Joseph B. Reilly* for respondent. Defendant's acceptance of the draft in the capacity of executor of the estate does not bind him individually. (*Bk. of Troy* v. *Topping*, 9 Wend. 273; Story on Notes, § 63; Story on Bills, § 74; Edwards on Bills, 79; 1 Daniels on Neg. Inst., §§ 255, 263; *Lake* v. *Trustees, etc.*, 4 Den. 520; *Kingsberry* v. *Pettis Co.*, 48 Mo. 207; *Tooker* v. *Arnoux*, 76 N. Y. 397.) The draft in suit was non-negotiable, as appears upon its face, it was chargeable against a certain fund, that is, the interest of the drawer in his mother's estate; hence, the plaintiff is in no better condition than the payee named therein. (*Cook* v. *Satterlee*, 6 Cow. 108; *Skilen* v. *Richmond*, 48 Barb. 428; 1 Daniels on Neg. Inst., § 263; Story on Prom. Notes, § 63; 1 Pars. B. & N. 161.) It can be only construed as an equitable assignment of sufficient of that interest to pay the amount set forth in the instrument. (*Wells* v. *Williams*, 39 Barb. 567; *Richardson* v. *Rust*, 9 Paige, 243; *Vreeland* v. *Blunt*, 6 Barb. 182.) When a party accepts a draft of this character in a representative capacity, and such fact be known, then he is only liable in such representative capacity. (44 N. Y. 395; 15 Johns. 1; 6 How. Pr. 1; 17 Johns. 301; 1 Cow. 514; *Brockway* v. *Allen*, 17 Wend. 40; *Seaber* v. *Hawkes*, 5 Moore & Payne, 549.) The only construction that can be given to the words in the draft "and of my mother's estate," is that the drawer directed the executor to pay $900 of the estate of his mother. (*Gallery* v. *Cushman*, 14 Barb. 186; *Tooker* v. *Arnoux*, 76 N. Y. 397; *Schoonmaker* v. *Roosa*, 17 Johns. 300.) It is not a positive promise to pay; at the most it is a conditional promise, dependent upon the extent of William J. Scharen's interest in his mother's estate. (1 Pars. on B. & N. 161; Story on Bills, § 47; Story on Notes, § 63.)

RUGER, Ch. J. The plaintiff claimed to recover as the holder of a draft, drawn upon and accepted by the defendant, reading as follows:

"NEW YORK, *February* 26, 1877.

"Mr. Adam Simon, executor, will please pay to Johannes

Schmittler or his order, on the first day of July, which will be in the year 1879, the sum of $900, with seven per cent interest, to be paid besides this amount yearly, July month, and charge the amount against me and of my mother's estate.

"WILLIAM J. SCHAREN."

Written upon the face: "Accept, Adam Simon, executor," and indorsed, "Pay to the order of Mary Schmittler, the amount of note. JOHANNES SCHMITTLER."

Upon the trial, after proving the execution of the draft, its acceptance and transfer, and offering to prove the payment of a consideration by the plaintiff to the payee, which was objected to by defendant, and excluded by the court, the plaintiff rested. The defendant thereupon moved to nonsuit upon the ground that the obligation was not binding upon the defendant personally, but he was liable thereon, if at all, in his representative character alone, and that it was payable out of a specific fund, and a recovery thereon, could not be had without proving the existence and extent of such fund. The court thereupon nonsuited the plaintiff, to which decision she excepted. The General Term having affirmed the determination of the trial court, the plaintiff took this appeal.

We think the court below erred as to both of the grounds upon which their judgment proceeded. That the defendant was liable upon the draft, if liable at all, in his individual capacity alone, seems under the authorities to admit of no doubt.

Neither executors nor administrators have power to bind the estate represented by them through an executory contract, having for its object the creation of a new liability, not founded upon the contract or obligation of the testator or intestate. They take the personal property as owners and have no principal behind them for whom they can contract. The title vests in them for the purposes of administration, and they must account as owners to the persons ultimately entitled to distribution. In actions upon contracts made by them, however they may describe themselves therein, they are personally liable, and in actions thereon the judgment must be *de bonis propriis*.

Not so, however, upon contracts made by their testator or intestate; in such case the judgment is always *de bonis testatoris.* (*Gillet* v. *Hutchinson's Adm.,* 24 Wend. 184; *Ferrin* v. *Myrick,* 41 N. Y. 315; *Austin* v. *Monroe,* 47 id. 360, 366.)

The action here is exclusively upon the undertaking of the defendant, importing a promise to pay the sum of $900 on the 1st day of July, 1879, to the payee of the draft or his order for a consideration received by the promisor. No facts are alleged or proved, showing any liability on the part of the defendant's testator to the drawee of the draft, or any legal demand existing in his favor, against the estate represented by the defendant.

It follows that the obligation must be held to be the individual contract of the defendant, and enforceable as such by a judgment against him, and execution to be levied *de bonis propriis,* or it is *nudum pactum* creating no liability whatever.

The cases are very numerous to the effect that the addition of an official character, to the signatures of executors and administrators, in executing written contracts and obligations has no significance, and operates merely to identify the person and not to limit or qualify the liability. Thus it was held in *Pinney* v. *Administrators of Johnson* (8 Wend. 500), that a bond given by administrators in their representative capacity to a creditor for a debt of their intestate, was the individual obligation of the administrators and enforceable against them *de bonis propriis* only; that the description of the obligors in the bond as administrators, and their promise in that character was surplusage, and they were chargeable upon such a bond only in their personal capacity. (See, also, *Gould* v. *Ray,* 13 Wend. 633.) Parsons on Bills and Notes, vol. 1, page 161, lays down the rule that " an administrator or executor can only bind himself by his contracts; he cannot bind the assets of the deceased. Therefore, if he make, indorse or accept negotiable paper, he will be held personally liable, even if he adds to his own name the name of his office. Signing a note for example, ' A. as executor of B,' for this will be deemed only a part of his description or will be rejected as surplusage." To similar effect are *Pum-*

*pelly* v. *Phelps* (40 N. Y. 59), *Taft* v. *Brewster* (9 Johns. 334), *Forster* v. *Fuller* (6 Mass. 58), *Hills* v. *Banister* (8 Cow. 31), *Thatcher* v. *Dismore* (5 Mass. 299), *Cornthwaite* v. *First Nat. Bank* (57 Ind. 268).

Being of the opinion, therefore, that the defendant is liable upon the draft in question in his individual capacity alone, the question still remains as to the extent of such liability. He was undoubtedly competent to enter into a personal contract in reference to the funds in his possession, and in such case would be bound to perform according to the tenor and legal effect of the obligation assumed by him, and entitled to be allowed the amount paid upon an accounting, as executor. Such instruments are subject to the rules of construction applicable to other contracts, and must be interpreted upon consideration of the language used by the parties, with a view of arriving at their intention in executing them. The court below held that the draft in question was payable only from a particular fund, and was, therefore, non-negotiable, and enforceable only to the extent of the fund referred to.

Considering the question as we are compelled to do from the language of the instrument alone, we are unable to agree to the interpretation thus put upon it. It is not claimed that there is any distinction between the instrument in question and an ordinary bill of exchange except that made by the clause referring to the mother's estate. Unless that clause deprives the paper of its commercial character, the rights and liabilities of the parties thereto must be governed by the rules pertaining to negotiable securities, which would render the defendant liable for the amount named in the draft, upon the theory that his acceptance was an admission by him of assets applicable to its payment.

The distinction between a fund from which a draft or order is directed to be paid, and one referred to as the means of reimbursment to its drawee, is a material one and cannot be disregarded in the construction of such instruments. Thus it is said: "When a reference is made to a special fund merely as a direction to the drawee how to reimburse himself, and the payment

is not made to depend upon the adequacy of the fund, it will not vitiate the bill." (Edw. on Bills and Notes, § 158.) See, also, Parsons on Merc. Law, 87; Chitty on Bills, 158. DWIGHT, Com., in *Munger* v. *Shannon* (61 N. Y. 255), says: "A bill is an order drawn by one person on another to pay a third a certain sum of money absolutely and at all events. Under this definition the order cannot be paid out of a particular fund, but must be drawn on the general credit of the drawer, though it is no objection, when so drawn, that a particular fund is specified from which the drawee may reimburse himself." Judge RAPALLO, in *Brill* v. *Tuttle* (81 N. Y. 457), says: "If a draft be drawn generally upon the drawee, to be paid by him in the first instance, on the credit of the drawer and without regard to the source from which the money used for its payment is obtained, the designation by the drawer of a particular fund, out of which the drawee is to subsequently reimburse himself for such payment, or a particular account to which it is to be charged, will not convert the draft into an assignment of the fund, and the payee of the draft can have no action thereon against the drawee unless he duly accepts." In that case the drawee refused to accept and the action was sought to be maintained upon the theory of an equitable assignment. It was held under the peculiar circumstances of the case, and the form of the instrument, that it did transfer the fund.

It is thus seen that the mere mention of a fund in a draft, does not necessarily deprive it of the character of commercial paper, but it must further appear in order to have that effect, that it contains either an express or implied direction to pay it therefrom, and not otherwise.

The question, therefore, to be determined here is, whether the fund in question is referred to as the measure of liability or the means of reimbursement. While the point is not free from doubt, we think a reasonable construction of the draft favors the conclusion that it is mentioned only as the source of reimbursement. No express language in it can be pointed out as requiring its payment from the fund mentioned, and none from which that requirement can be implied, except such as

exists, in all drafts where a fund is referred to. Its language is to " charge the amount against me and of my mother's estate " and contains no provision for delay until the amount is realized from the estate, or for payment *pro tanto* in case the estate should prove insufficient to pay the whole amount. There is no language importing a transfer of the fund to the payee, and nothing from which such an intention can be inferred. The draft contains an absolute direction to pay a fixed sum, at a specified date, with interest. It imports a present indebtedness of a sum named, from the drawee to the payee, and an absolute direction to pay that sum at a fixed date, subject to no contingency either as to time or amount. In express language he directs the amount when paid to be charged against him individually, and adds the words, plainly implying, as we think, that the fund for the acceptor's reimbursement would be found in an amount eventually, or immediately payable to the drawer from his mother's estate.

We think, also, that the insertion of words expressly making the paper negotiable, was quite significant and indicated an intention on the part of all parties, that it should be transferable, and partake of the character of commercial paper. Any contingency inferable from the language of the draft, making the amount payable thereon indefinite and uncertain, would tend largely to depreciate its value for such purpose, and defeat the intention with which it was apparently made.

If the language of the paper could be considered at all ambiguous, it was the duty of the defendant to limit his liability by apt words of acceptance when it was presented to him, but as it is, he has unqualifiedly promised to pay a fixed and definite sum at a specified time, and we think, should be held to the contract which other parties were authorized by his acceptance to infer he intended to make. The case of *Tassey* v. *Church* (4 Watts & Sergeant, 346) seems quite in point. The instrument there read:

"$555.48.                    ALLEGHENY, 1*st July*, 1840.

"Please pay Church, McVay & Gordon $555.48 and charge the estate of Thomas C. Patterson.

                    "ADAM FLEMMING, *Trustee.*"

"To JOHN TASSEY, *Administrator.*

Indorsed: "Accepted, JOHN TASSEY, *Administrator.*"

Fleming was the trustee of Mrs. Patterson, who was the heir at law of Thomas C. Patterson; Tassey was the administrator of Patterson's estate. It was held that the promise of the acceptor was unconditional and bound him absolutely. In *Childs* v. *Monins* (6 Eng. C. L. 228), the defendants, as executors of the estate of Thomas Taylor, promised to pay £200 on demand with interest, signing as executors. It was held that they became personally liable, and that the plea of *plene administravit* was no defense. It was further held that the promise to pay interest made the debt that of the administrators personally. In *Kelly* v. *Brooklyn* (4 Hill, 263), the action was upon an order drawn by the mayor upon the treasurer of defendant in the following words: "Pay Alexander Lyon or order $1,500 for award No. 7, and charge to Bedford Road Assessment." It was held that it was a bill of exchange and not payable from a particular fund. For further illustration of the point under discussion we would refer to *Hollister* v. *Hopkins* (13 Hun, 210); *Redmond* v. *Adams* (51 Me. 429); *Luff* v. *Pope* (5 Hill, 413). The case of *Tooker* v. *Arnoux* (76 N. Y. 397) is referred to by the respondent as sustaining the views of the court below; but we are of the opinion that it cannot be so regarded. The order there directed the drawee to pay a certain sum out "of the money to be realized from the sale" of certain houses. This order was accepted, and it was held that a sale of the houses was a condition precedent, to any liability on the part of the acceptor. This was the plain language of the contract.

In all the cases examined by us where an order has been held to operate as an equitable assignment of a fund, there were either special phrases contained in the instrument, indicating an

intent to have it so operate, or ambiguous language used, which, construed in the light of surrounding circumstances, justified the inference of a limitation of liability.    (*Parker* v. *Syracuse*, 31 N. Y. 376 ; *Alger* v. *Scott*, 54 id. 14 ; *Munger* v. *Shannon*, 61 id. 251 ; *Ehrichs* v. *DeMill*, 75 id. 370 ; *Brill* v. *Tuttle*, *supra*.)    Here, however, there is no such language, and this contract is to pay a fixed amount at a specified date, absolutely and unconditionally.

We are, therefore, of the opinion that the instrument in question is a bill of exchange and rendered the parties executing it liable absolutely for the amount stated therein.

The judgment of the courts below should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.