GEORGE GUNTHER, Respondent, *against* LOUIS DARMSTADT
et al., Respondents, impleaded with ABRAHAM STEERS,
Appellant.

(Decided January 3d, 1888.)

A building contractor drew, in favor of his sub-contractor, the follow-
ing order on the owner of the building: " Please pay Abraham Steers
or order two thousand dollars and charge the same to the balance due
on my contract for the erection of two buildings [describing them]."
*Held*, that the fact that the order was by its terms negotiable indicated
an intention of the parties that it should partake of the character of
commercial paper, which, taken in connection with the fact that the
drawer knew that there was nothing due him at the time, and that
payments had been made for the work without reference to the time
of payment stipulated in the contract, was sufficient to sustain the
finding that the order was a mere draft, and not an order on a par-
ticular fund which would operate as an assignment.

APPEAL from a judgment of this court entered upon the
report of a referee.

The action was for the foreclosure of a mechanic's lien.
The facts are stated in the opinion.

The report of the referee to whom the action was referred
adjudged that the defendants lienors, Moller and St. John,
Hoyt, & Co., were entitled to the money found due from
the defendant owner, Darmstadt, to the defendant contrac-
tor, Douglas, and that the defendant Steers was not entitled
to any part thereof. From the judgment entered upon this
report the defendant Steers appealed.

*E. H. Moeran*, for appellant.

*Austen G. Fox*, for Moller, respondent.

*Charles W. Dayton*, for St. John *et al.*, respondents.

J. F. DALY, J. — The appellant Abraham Steers claims a
portion of the moneys due from the owner to the contractor
by virtue of the following order:

Gunther *v.* Darmstadt.

"New York, September 28th, 1885.

"Louis Darmstadt, Esq., 49 Ann Street, N. Y. City: —

"Please pay Abraham Steers or order two thousand dollars and charge the same to the balance due on my contract for the erection of two buildings on south side of Sixtieth street 300 feet of First Avenue in the City of New York.

"Nathan Douglas."

Douglas was the contractor with Darmstadt, the owner, for the erection of the buildings, and having purchased from Steers lumber to be used in the buildings, gave the above order to one Thompson, the collector and superintendent for Steers, telling him that there was about $3,000 due him, the contractor, on the job, and that the order would be paid in a few days. Thompson presented the order to Darmstadt the day after it was drawn and asked him for the money. According to Thompson's testimony, Darmstadt looked at his ledger, figured up $3,000 due on the contract, and said he should not pay the money that day, but it would be paid in a few days, that Thompson asked him if he would not give his note, as they wanted to use the money, but that Darmstadt refused; and that Thompson did not ask him to accept the order. He also says that the order was to apply on the amount due from Douglas to Steers, but that Douglas did not receive credit for the amount.

From the testimony of Douglas, the drawer, it would appear that nothing was due him from Darmstadt at the time he drew the order, and that he had no general credit with the latter, and that the money was to become due when the buildings were completed, which was three or four weeks after that.

Darmstadt, the owner, swears that he did not tell Thompson that the order would be paid in a few days, but referred him to his son, and kept the order to give the latter. The son, Louis F. Darmstadt, swears that he saw Thompson three or four days after, who asked him if his father was going to accept the order, and contended that it had been accepted by his father taking it; that he looked after

the buildings for his father and made payments to Douglas right along without reference to the number of payments provided for in the contract.

It was argued by the appellant Steers that the order in question operated as an assignment *pro tanto* of the moneys subsequently coming due under the contract between Darmstadt and Douglas, and that he should be paid the amount thereof in preference to the persons who subsequently filed liens against the buildings. The referee held that it was a mere draft, and that the circumstances attending the drawing and delivery of it did not indicate an intention to assign any part of the fund. The ground for his decision was that, under the authorities, the direction in the draft to pay and charge to the balance due on the drawer's contract merely designated a source of reimbursement, and was not a direction to pay out of the particular fund; that the draft was intended as a negotiable instrument by the direction to pay to Steers' "order"; that Darmstadt did nothing to recognize Steers' right to the fund, and Douglas did not receipt for the amount to Darmstadt (*Brill* v. *Tuttle*, 81 N. Y. 454; *Schmittler* v. *Simon*, 101 N. Y. 554; *Gibson* v. *Lenane*, 94 N. Y. 183).

It was held in *Brill* v. *Tuttle* that when the order is not negotiable and its language is ambiguous, the attendant circumstances may be shown to ascertain the intention and understanding of the parties. In *Schmittler* v. *Simon* it is said that the insertion of words expressly making the paper negotiable was quite significant, and indicated an intention on the part of all the parties that it should be transferable and partake of the character of commercial paper, and that any contingency inferable from the language of the draft making the amount payable thereon indefinite and uncertain would tend largely to depreciate its value for such purpose and defeat the intention with which it was apparently made; and that in all the cases where an order had been held to operate as an equitable assignment of a fund, there were either special phrases contained in the instrument indicating an intent to have it so operate, or ambiguous language used

which, construed in the light of surrounding circumstances, justified the inference of a limitation of liability: citing *Parker* v. *Syracuse* (31 N. Y. 376); *Alger* v. *Scott* (54 N. Y. 14); *Munger* v. *Shannon* (61 N. Y. 251); *Ehrichs* v. *De Mill* (75 N. Y. 370); and *Brill* v. *Tuttle*. If the paper be regarded as a direction to pay the amount out of the designated fund when it should accrue, then it operates as an assignment *pro tanto* of such fund; if it be intended as a direction to the drawee to advance the amount of the order without regard to the state of the account and charge the amount thus advanced to the drawer, and for the drawee to subsequently reimburse himself out of the sums to become due from him to the drawer on the specified account, then it is not an assignment. The question is whether the draft was drawn upon the general credit of the drawer or upon a particular fund (*Brill* v. *Tuttle*, above).

In the case of the order before us we have the fact that it is by its terms negotiable, a circumstance regarded as controlling in *Brill* v. *Tuttle*; but if not decisive upon the question of the intent of the drawer and payee, then, according to *Schmittler* v. *Simon*, it is quite significant, and indicates an intention that the order should partake of the character of commercial paper, because its value as such would be largely depreciated, and such intention would be defeated by construing it to be an assignment of a fund or part of a fund, thereby making payment indefinite and uncertain, because contingent upon the drawer becoming entitled to such fund. Starting with this strong evidence of the intention of the parties, we have the fact that the drawer knew that there was nothing due him at the time it was made, and that payments had been made to him by the drawee for his work under the contract without reference to the time of payment stipulated in the contract. As Louis F. Darmstadt testifies, "I made payments to Douglas right along without reference to the number of payments provided for in the contract." It was evidently drawn in the hope that it would be honored without regard to the fact that payment under the contract had not matured, and

without any intention that payment should be deferred or be contingent upon earnings under the contract.

There is but one case cited by appellant which holds that a negotiable order in the form of that under discussion operates as an assignment. In *St. John* v. *Vaupel* (Com. Pl. Spec. T. June, 1887) there was such an order, but the evidence in the case as to what transpired between the drawer and payee when the order was made, showed that it was intended as an appropriation of moneys to fall due in the future, and was not drawn on the general credit of the drawer, for there was no such credit.

The judgment should be affirmed, with costs against appellant in favor of the respondents Moller and St. John, Hoyt, & Co.

LARREMORE, Ch. J., and VAN HOESEN, J., concurred.

Judgment affirmed, with costs, accordingly.