LEVI S. NOYES, APPELLANT, *v.* WILLIAM TURNBULL, RESPONDENT, IMPLEADED WITH SILAS H. POMEROY AND CHARLES ATWATER.

*Business conducted, by direction of a testator, by trustees named in his will — liability of a trustee who has retired from the trust for debts subsequently contracted.*

Theodore L. Pomeroy, who had for some years prior to his death carried on a manufacturing business in Massachusetts with his son, Silas H. Pomeroy, as his partner, under the firm name of "L. Pomeroy's Sons," made a will by which he gave all this manufacturing property to three trustees, William Turnbull, Silas H. Pomeroy and Charles Atwater, in trust, to continue and carry on said business until his son, Theodore L., should arrive at twenty-one years of age, incurring liabilities on account of the estate, exercising the same power as the testator exercised, and paying over during the continuance of the trust such portion of the property to Silas H. and Theodore L. as, in their judgment, the administration of the trust would permit.

The trustees accepted the trust and carried on the business under the name of "L. Pomeroy's Sons," and in 1882 and 1883 bought from John Consalus wool to be used in the said business. It appeared that prior to the death of Theodore L. Pomeroy the firm had also bought of Mr. Consalus, and that Consalus had no further dealings with L. Pomeroy's Sons from March 13, 1883, to August 28,

1886; that in January or February, 1887, he sold wool to "L. Pomeroy's Sons," for which he received notes dated, respectively, May 23, 1887, and June 9, 1887, signed "L. Pomeroy's Sons," which notes had been transferred to the plaintiff and had not been paid.

Some time prior to May, 1885, an action was brought by Turnbull and Atwater, in Massachusetts, asking to be relieved from the trust and that new trustees be appointed. Under an agreement of the parties a decree was made which authorized Silas H. Pomeroy to act as sole trustee, and directed that the business should be so conducted as to create no liability on the part of the plaintiffs, as trustees, and that they were not to be liable for any debt incurred by him, as trustee, and made by "L. Pomeroy's Sons," or by Silas H. Pomeroy, in that name, and that as soon as William Turnbull & Co. had received their mortgage for a balance due them, and Silas H. had paid or renewed outstanding paper of L. Pomeroy's Sons, the plaintiffs were to be discharged as trustees.

Prior to the time of this decree the trustees used for correspondence in business matters paper with the following letter-heads: "William Turnbull, Charles Atwater and S. Harris Pomeroy, Trustees of L. Pomeroy's Sons, Pittsfield, Mass.;" all before L. Pomeroy's Sons being in red ink. After the decree, letter paper was used with the heading: "L. Pomeroy's Sons, Pittsfield, Mass., S H. Pomeroy, Trustee;" with which last-mentioned letter paper S. H. Pomeroy had corresponded with Consalus prior to the purchase for which the notes in question were given.

It was claimed by the plaintiff that Turnbull was liable on the principle that a retiring partner will be held liable for subsequent purchases made of a party with whom the old firm had previously dealt, and who had not been notified of the retirement.

*Held*, that the three trustees were never partners.

That their rights were very different from those of partners in the respect that they had no beneficial interest in the property ; that they were joint tenants and not tenants in common; that on the death of one of the trustees his representatives would have no interest in the trust estate, and that the trustees could not voluntarily relinquish the trust.

*Quære*, as to whether or not all the three trustees were personally liable to Consalus for purchases made prior to the decree.

That, even if Silas H. Pomeroy, who made the purchases prior to the making of the decree, was personally liable, it would not follow that Turnbull was also liable.

That the discharge of Turnbull from his trust under the decree did not, as was claimed by the plaintiff, bear any resemblance to the retiring of a partner from a firm.

That a court of equity had special power over all express trusts and might remove a trustee, even against his will.

That, considering the change in the letter heading and the number of years that had elapsed between the purchases made before the decree and those made thereafter, a judgment in favor of the defendant Turnbull should be affirmed. (INGALLS, J., dissenting.)

APPEAL by the plaintiff from a judgment in favor of the defendant William Turnbull, entered upon the trial of this action, at a Special Term held in Saratoga county, in the office of the clerk of Saratoga county on January 31, 1889.

Theodore L. Pomeroy had for some years prior to his death carried on a manufacturing business in Massachusetts, with his son, Silas H. Pomeroy, as his partner, under the firm name of "L. Pomeroy's Sons." He died in September, 1881, having made his will, which was duly proved in that State, in which he resided. By that will he gave all this manufacturing property (which he seemed to consider belonged to himself solely) to three trustees, William Turnbull, Silas H. Pomeroy and Charles Atwater, in trust, to continue and carry on the said business until his son, Theodore L., should arrive at twenty-one, incurring liabilities on account of the estate, exercising the same power which the testator exercised, and paying over, during the trust, such portion of the profits to Silas and Theodore L. as, in their judgment, the administration of the trust would permit.

The trustees accepted the trust, and in carrying on the business used the name "L. Pomeroy's Sons."

In 1882 and 1883 the trustees bought from John Consalus wool to be used in the said business, and prior to the death of Mr. Pomeroy the firm of "L. Pomeroy's Sons had also bought wool of Consalus. But Consalus had no dealings with "L. Pomeroy's Sons" from March 13, 1883, to August 28, 1886.

Some time prior to May, 1885, an action was brought by Turnbull and Atwater in the Supreme Judicial Court of Massachusetts against Silas H. Pomeroy and others, interested in the estate of Theodore Pomeroy, deceased. In the bill of complaint therein the plaintiffs, for reasons therein given, asked to be released from the trust and that new trustees be appointed. Thereupon, May 18, 1885, an agreement in that action was made between the parties. And subsequently, June 1, 1886, a decree was made by the said court. By this decree Silas H. Pomeroy was authorized to act as sole trustee; the business was to be so conducted as to create no liability on the plaintiffs as trustees, and they were not to be liable for any debt incurred by him as trustee, or on any note or obligation thereafter made by "L. Pomeroy's Sons," or by said Silas H. Pomeroy

in that name. As soon as William Turnbull and Company had received their mortgage for a balance due them, and said Silas H. had paid or renewed outstanding commercial paper of " L. Pomeroy's Sons," the plaintiffs were to be discharged as trustees.

Subsequently, in January and February, 1887, Consalus sold wool to " L. Pomeroy's Sons," for which he received notes dated, respectively, May 23, 1887, and June 9, 1887, signed " L. Pomeroy's Son's," which had been transferred to plaintiff and had not been paid.

Prior to the time of the decree the trustees in their business had used for correspondence letter paper with the following letter-heads : " William Turnbull, Charles Atwater and S. Harris Pomeroy, trustees of L. Pomeroy's Sons, Pittsfield, Mass. ; " all before "L. Pomeroy's Sons " being in red ink. After the decree Silas H. Pomeroy, used letter paper with the letter-head : " L. Pomeroy's Sons, Pittsfield, Mass., S. H. Pomeroy, trustee." The other letter-heads were not in use by defendants after June 1, 1886. On paper bearing the second letter-head said S. H. Pomeroy corresponded largely with said Consalus, and that, too, prior to the purchase for which the notes in question were given.

The question was whether William Turnbull was liable on these notes.

*E. F. Bullard,* for the appellant.

*Jesse Johnson,* for the respondent.

LEARNED, P. J. :

It is evident that, as a matter of fact, the defendant Turnbull was not one of the persons who bought the wool alleged in the complaint, and was not one of the persons who made the notes therein set forth ; that wool was, in fact, bought and those notes, in fact, made solely by Silas H. Pomeroy. But the plaintiff claims that Turnbull is liable on the principle that a retiring partner may be liable for subsequent purchases made by the firm of one with whom the firm has previously dealt, and who has not been notified of the retirement. Two questions are presented, the one whether that principle applies in this case ; the other whether Consalus had not, in fact, notice that he was dealing only with Silas H. Pomeroy.

The three trustees were never partners, and in many respects their rights were very different from those of partners ; they had no bene-

ficial interest in the property; they were joint-tenants, not tenants in common; on the death of one, his representatives would have no .interest in the trust estate; one of the trustees could not voluntarily relinquish the trust; they were accountable for the proper management of the trust to the persons beneficially interested therein. All these particulars show that the position of trustees is widely· different from that of partners.

It is not, perhaps, necessary to decide in this case whether or not all of the three trustees were personally liable to Consalus for purchases made prior to the decree. We are not willing to assume that they were thus liable. The cases of *Thacher* v. *Dinsmore* (5 Mass., 299); *Schmittler* v. *Simon* (101 N. Y., 554) only decide that an executor who signs or indorses or accepts negotiable paper is personally liable, although he adds to his name the word "executor," or the like. *Foland* v. *Dayton* (40 Hun, 563) held that an executor will be personally liable for services done for the estate where there is no agreement to look to the estate, and that such agreement may be shown by circumstances. *Austin* v. *Munro* (47 N. Y., 360) is to the same effect, for it is said that executors have no right to bind the estate for debts contracted by them. This reason, it will be seen, does not apply to these trustees. So in *New* v. *Nicoll* (73 N. Y., 127) it was held that generally trustees cannot change the trust estate, unless so authorized by the instrument creating the trust, but are personally liable on contract made by them.

Now that exception takes the present case out of the two decisions last cited; for these trustees were expressly authorized to incur, on account of the trust, further liabilities, and were to carry on the manufacturing business, which would require a constant incurring of debts. It cannot be assumed that they were to do this on their own responsibility, especially when they were expressly authorized to do this on account of the trust, Nor did they give their personal obligations, the business being throughout conducted in the old name of "L. Pomeroy's Sons."

Even if it should be urged that Silas H. Pomeroy, who made the purchases prior to the decree, was personally liable, it would not follow that Turnbull was liable also. As above pointed out, these trustees were not partners. When a partner purchases in the business of the firm all the partners are liable, because all are interested

beneficially in the purchase in the profits of the business. But it is not so with trustees. They are not interested in the profits of the business. They are conducting a trust for the benefit of others. An executor who gives his note as executor for a purchase made by him for the estate may be personally liable. But it does not follow that his co-executor is also personally liable on that note. So, even if Silas H. was personally liable for purchases made by him, it would not follow that Turnbull was personally liable therefor, although he knew of the fact. Because, as we have seen, the authority, expressly as well as impliedly given by the will, was to incur liabilities on account of the trust estate. And there was abundant notice given by the letter-heads above mentioned, that the business was in the hands of trustees. Those who dealt with the concern must, therefore, have known that the business was carried on by persons having no beneficial interest therein. And inquiry would at once have disclosed the terms of the will and the authority given thereby.

Passing this question, however, we come to the effect of the discharge of Turnbull from his trust under the decree. Now, the plaintiff compares this transaction to the retiring of a partner. There is no resemblance. A partner who retires often takes some of the capital with him. At any rate, he withdraws (or assumes to withdraw) that personal liability for the partnership debts which is on him as partner. He retires voluntarily and as a matter of right. The trustee discharged by the decree takes with him no capital. The property of the trust remains unaffected. He withdraws no personal liability; for when the trust deed authorized (as did this) the incurring of liability, then the liabilities incurred must be those of the trust estate, unless by some personal act a trustee makes himself liable. Furthermore, the trustee cannot relinquish his trust at pleasure. He can only be released by the court. Whatever the misconduct of his co-trustee, he cannot, as a matter of right, step out of the trust.

In all these respects the supposed analogy between the two cases fails. Furthermore, it may be said generally that a trustee is liable only for his own acts or his own negligence. A partner is often liable for the acts or negligence of his copartner. Hence it is that one dealing with a partnership may look to the liability of all the

partners, and therefore arises the principle that the retiring partner must give notice of his retirement, but it is not so with a trustee.

The court of equity has special power over all express trusts. It may discharge a trustee and appoint another. It may remove a trustee against his will. Would the trustee removed against his will be liable for acts subsequently done, even if he did not give notice of his removal?

Some stress is laid on the fact that prior to the decree Turnbull knew that his co-trustee, Pomeroy, was purchasing wool on credit. But it does not appear that Pomeroy was purchasing on the credit of Turnbull; and that Pomeroy should purchase on the credit of the trust estate, or on his own credit, would be no ground of liability against Turnbull. For Pomeroy was not, as co-trustee, an agent of Turnbull. Even if the trustees had divided the trust duties among them, we do not see that one would be responsible for the acts of another.

A further consideration is that which was principally relied upon by the learned justice who tried the case; that is the change in the letter-heads. We must consider that some years had elapsed between the purchases made before the decree and those made after. Then Consalus received some twenty letters in which the letter-head contained, as above stated, the name only of S. H. Pomeroy as trustee. As the old letter heads contained the names of the three, this charge should have put him upon inquiry.

For all these reasons we think the judgment should be affirmed, with costs.

LANDON, J., concurred.

INGALLS, J. (dissenting):

This action was brought by the plaintiff to recover upon two promissory notes, of which the following are copies:

"L. POMEROY'S SONS.

" $1,197.76.

'PITTSFIELD, MASS., *May* 23, 1887.

"Four months after date we promise to pay to the order of John Consalus eleven hundred and ninety-seven $\frac{76}{100}$ dollars at the Agricultural Bank. Value received.

"L. POMEROY'S SONS."

"L. POMEROY'S SONS.

"$2,244.11.

"PITTSFIELD, *June* 9, 1887.

"Thirty days after date we promise to pay to the order of John Consalus, twenty-two hundred and forty-four $\frac{11}{100}$ dollars at the Agricultural Bank. Value received.

"L. POMEROY'S SONS."

The notes were indorsed by John Consalus, and for a valuable consideration transferred to the plaintiff before the commencement of the action. The defendant Turnbull was alone served with process, and is the only defendant who has appeared in the action. The notes were executed in the firm name of "E. Pomeroy's Sons," and were given for wool sold and delivered to the defendants, under the following circumstances: Under such firm name a manufacturing business was established at Pittsfield, Massachusetts, by Theodore Pomeroy and Robert Pomeroy, who were sons of Lemuel Pomeroy, and they continued such business, which consisted of the manufacture of woolen goods, until November, 1878, when Robert Pomeroy retired from the firm and immediately thereafter the defendant Silas H. Pomeroy became a partner in such business with his father, Theodore Pomeroy, and the business was prosecuted under the same firm name until the death of Theodore Pomeroy, which occurred September 26, 1881. He left a last will and testament, which was duly proved November, 1881. That portion of the will material to be considered is the following:

"In the further disposition of my estate, considering that of my five children two are sons, Silas H. and Theodore L., and three are daughters, Fanny, Margaret L. and Mary, and that a considerable part of my estate consists of mills and manufacturing property formerly of the firm of L. Pomeroy's Sons, and since the termination of second firm owned and occupied by me, the business being still carried on under said name of L. Pomeroy's Sons, which property is subject to the hazards of business needing the continued watchfulness, care and management of business men, I deem it right and proper that my sons, who, I hope, will, one or both, decide to continue the business with its labors and hazards, should receive a larger share of my estate than my daughters, and recollecting that

for similar reasons this mill and manufacturing property was left by my father to his sons, and my son Theodore L., being a minor, so that it is necessary that the care of his estate be committed to the charge of some person of competent age and experience, and believing that such disposition of said estate will be for the interest and advantage of both my sons, I do hereby give, devise and bequeath unto William Turnbull, of the city of New York, my said son Silas H. Pomeroy, and Charles Atwater of said Pittsfield, all the manufacturing property which was of the firm of L. Pomeroy's Sons, or which I have acquired since the termination of said firm, and owned, used and occupied in my said business under said name of L. Pomeroy's Sons, real, personal and mixed, of whatever name and nature soever and wheresoever situate (the real estate being principally located in said town of Pittsfield), including all rights and credits and every kind of property which the books and papers shall show to have been the property of said firm, or my property as the successor of said firm, and used by me in and pertaining to my business under the name of L. Pomeroy's Sons. And, also, the tract of land and buildings thereon, on the east side of the river in said Pittsfield, which I now own, and which I bought of J. D. Colt, the same being adjacent to, occupied and properly belonging with said manufacturing property. To hold to them, the said William Turnbull, Silas H. Pomeroy and Charles Atwater, and to the survivors and survivor of them, his heirs and assigns, as trustees, and solely for the trusts, uses and purposes following, viz.: To continue and carry on without interruption till my son Theodore L. shall arrive at the age of twenty-one years, the manufacturing business now carried on by me under said name of L. Pomeroy's Sons, in the same general manner said business is now carried on, subject to such changes in detail as, in the judgment of said trustees, the best interests of said trust may require, taking up and continuing said manufacturing business as the same shall be found at my decease, providing for the then outstanding and current liabilities incurred on account of and in said manufacturing business (but any credit which I may have on the books of L. Pomeroy's Sons is not to be treated as a debt due to my estate, and is not to be required to be paid to my executors by said trustees), and incurring on account of said trust estate, during the continuance of said trust, such further

liabilities as a wise and prudent management of said trust may require, and in all things that shall pertain to the proper execution of said trust, having and exercising the same power and control in the premises as is now exercised by me in the carrying on of said business. And said trustees shall annually, during the continuance of this trust, pay over to my two sons, Silas H. and Theodore L., in equal proportion, such portion of the profits of said business, if any, as, in their judgment, a wise administration of said trust and preservation of the estate from depreciation will justify and permit."

The defendants herein accepted the trust created by the will and entered upon the execution thereof, and continued the manufacturing business in the same manner it had been conducted previous to the death of the testator. The trustees purchased wool, from time to time, upon credit, using the firm name, "L. Pomeroy's Sons," in transacting the business, and such wool was made into cloth and sold in market. The defendants borrowed money of the Agricultural National Bank of Pittsfield, for the purposes of the trust, and kept an account in such bank, using the same firm name. The defendant, William Turnbull, who resided in the city of New York, visited Pittsfield as often as once a month, and participated in the business, in executing the trust, and received ample compensation for his services, which was paid from the proceeds of the business. He testified at the trial that he was aware that wool was purchased upon credit, which was used in the business. During the years 1882 and 1883, the defendants purchased wool of said John Consalus, upon credit, which was used in such business, and was paid for subsequently by the trustees. The court has found, upon that subject, the following: "Sixth. That during the years 1882 and 1883, the said defendants bought wool from John Consalus, of Troy, N. Y., for said manufacturing business, and which was paid for by the defendants." The defendants in conducting their correspondence with persons with whom they transacted business, connected with the execution of such trust, used paper which contained a letter-head, in the following form:

WM. TURNBULL,　　CHAS. ATWATER,　　S. HARRIS POMEROY,
　　　　TRUSTEES OF L. POMEROY'S SONS.

PITTSFIELD, MASS., ........ 18　.

The words " Wm. Turnbull, Chas. Atwater and S. Harris Pomeroy, trustees of," in this letter-head, were printed in red ink, and the remainder in black ink. Considering the nature of the trust, and the duties imposed thereby, and the character of the business involved, and the manner the trustees performed the same, in executing such trust, we are convinced that within the principle established by the following adjudications, the trustees became personally liable for wool purchased by them upon credit, and which was used in such manufacturing business, as was the case in the purchases made of John Consalus. (*Thacher* v. *Dinsmore*, 5 Mass., 299; *Schmittler* v. *Simon*, 101 N. Y., 554; *New* v. *Nicoll*, 73 id., 127; *Austin* v. *Munro*, 47 id., 360; *Foland* v. *Dayton*, 40 Hun, 563.) It does not appear that when the purchases of wool were made of Consalus that he was informed that they were made upon the credit of the trust estate, and that he must look to such fund for payment. Nothing seems to have been said upon the subject, and there is no evidence to the effect that he had any knowledge in regard to the pecuniary condition of such estate; under such circumstances he was, we think, at liberty to treat the trustees as personally liable to him for the wool, and leave them to look to the trust estate for reimbursement. It will be perceived that the letter-head contained not only the firm name, but also the names of each of the trustees in full. Assuming, therefore, that the three trustees became personally liable for the wool purchased of John Consalus, during the years 1882 and 1883, we are to inquire whether anything occurred subsequent thereto which had the effect to relieve the defendant Turnbull from liability personally for purchases of wool made of Consalus subsequent to that date, and which was used in the business of the trust. The fact that the firm name " L. Pomeroy's Sons " was used by the trustees in transacting the business, under the circumstances, cannot change the rule in regard to the personal liability of the trustees.

It appears that an action was commenced in the Supreme Judicial Court of Massachusetts, in which William Turnbull and Charles Atwater, trustees under the will of Theodore Pomeroy, said Atwater being also executor of the said will, against Silas H. Pomeroy and others. And on the 1st day of June, 1886, a decree was entered in the action, which, among other things, provided, upon certain

conditions therein specified, that the said Turnbull and Atwater should be allowed to retire from such trust as such trustees, and that the further execution of such trust should be continued by the remaining trustee, Silas H. Pomeroy. Such decree seems to have been based substantially upon a written agreement executed by the trustees and the other parties who were interested in the execution of the trust, and by its decree the court seems to have given its consent to the carrying out of the scheme devised by the parties and incorporated in such agreement. The motive which prompted such arrangement is not disclosed, and we can only imagine that the purpose was to reduce the expenses which attended the execution of the trust under the management of the three trustees, which are shown to have been considerable. The defendant Turnbull insisted upon the trial, and now here contends, that by force of said decree he became discharged from such trust, prior to the purchase of the wool of Consalus for the price of which the notes in suit were executed, and therefore that he is not personally liable in this action. Whatever might be the legal effect of such decree, as to the parties to that action, or as to parties who had notice thereof, or who furnished wool for the first time after the entry of such decree, to be used in such business, we are persuaded that as to John Consalus, who had sold wool to the defendants upon credit and to be used in the business of the trust, in the years 1882 and 1883, and received payment therefor from the trustees, and again in 1887 sold upon credit, and for the same purpose and under like circumstances, the wool for which the notes were executed, such decree cannot, we think, have the effect, under the circumstances of this case, to exempt Turnbull from personal liability in this action, unless he has at least succeeded in establishing a sufficient notice to Consalus, previous to the sale of the wool for which the notes were executed, that he had been discharged from such trust, as such trustee. It is very clear, from the evidence, that John Consalus had no knowledge, prior to the execution of the notes in suit, that an action had been commenced in the court in Massachusetts, or of the decree entered therein. John Consalus testified as follows: " Q. Previous to your selling these last lots of wool, did you ever know of William Turnbull withdrawing from the business, in any shape or manner? A. No, sir." We perceive nothing in the

evidence which conflicts with such statement. We are not able to adopt the contention of the learned counsel for the respondent, as applied to the facts of this case, that Consalus was bound to take notice of the decree of the court in Massachusetts, although not a party to the action, and having had no knowledge of its existence or of the decree entered therein. We are satisfied that such decree obtained in the manner it was could not have the effect to relieve the defendant Turnbull from personal liability for the wool purchased of Consalus in 1887, and for which the notes were executed. There are provisions in such decree which seem to suggest that the parties thereto contemplated that the trustees had become personally responsible for debts contracted in conducting the business under the trust. The wool for which the notes were executed was purchased within a year after the entry of the decree, and it does not seem improbable but that such wool was used in the manufacture of cloth and the proceeds applied to the retirement of the indebtedness of the trustees, as provided by the decree. We do not discover, from the evidence, when the conditions were performed upon which, according to the decree, the defendants Turnbull and Atwater were to be discharged from the trus⁺ as such trustees, and for aught that appears such period may have extended beyond the time the last lot of wool was purchased of Consalus, and used in' the business. It would seem, in view of all the facts, inequitable to apply the avails of such wool to the payment of the liabilities of the trustees, and allow them to escape responsibility upon the notes in suit, which were given for such wool. We conclude that the decree, in view of the facts disclosed, could not, in any event, have the effect to discharge the defendant Turnbull from the trust as such trustee so as to exempt him from personal liability for the wool purchased of Consalus and for which the notes were executed, unless the facts sufficiently establish notice to Consalus, with whom previous purchases of wool had been made by the trustees upon credit, that Turnbull had been discharged from such trust, and that such notice had been received by Consalus prior to the last purchase of wool, so that he could be regarded as having made the sale of the wool for which the notes were executed, with knowledge of the retirement of Turnbull. This presents the question upon which the cause seems to have been disposed of at the circuit, and the learned

justice based his decision mainly upon the assumption that the change of the letter-head after the decree, in the correspondence with Consalus, constituted sufficient notice of the retirement of Turnbull from the trust to free him from liability upon the notes in suit. We are constrained to differ with the learned justice in the conclusion thus reached by him. The substituted letter-head upon the paper used in such correspondence, was in the following form:

"L. POMEROY'S SONS,

"S. H. POMEROY, Trustee.                    PITTSFIELD, MASS."

The evidence is to the effect that Consalus received from the defendants letters in relation to the purchase of wool, written upon paper some of which bore one form of letter-head and some the other. Consalus was interrogated, as a witness, as to how he regarded such change, at the time, and he replied, in substance, that he understood that it merely indicated that Silas H. Pomeroy had the immediate supervision of the manufacturing of cloth, and of the purchase of wool, as incident thereto, which was to be used in such business, and that in that capacity he acted for all of the trustees. Consalus testified as follows: Q. In what capacity did you suppose S. H. Pomeroy was acting in the business? A. I supposed he was manufacturing, carrying on the business for the trustees of the estate, same as before, only under his management; that is what I always thought. Q. Explain what you mean in your answer to Mr. Johnson, that you did understand he was carrying on the business? A. I meant this — that he was carrying it on, doing the business there for the trustees, he being one of the trustees of the estate; the business as it always has been, and I think I said so before." Such inference of Consalus accords with the manner the business was actually conducted by the trustees previous to the change of the letter-head, as appears by the evidence of Silas H. Pomeroy.

"Q. Before May 18, 1885, in carrying on the business under the directions of your father's will, what did each defendant do in that behalf? A. Turnbull, during period, did not go up to Pittsfield only three or four times a year, and remain only a part of a day at our mill, up to May 18, 1885; a majority of the manufactured goods were consigned to his firm at New York, for sale on commission; in a few cases he ordered wool bought; that was about all he

did in our business; Atwater had charge of the bookkeeping at the mill, which was his main business; I had the charge of the manufacturing, and in the majority of cases purchased the wool for the mill. Thus it appears that the business under the trust was distributed, by the trustees, among themselves, in such manner that Silas H. Pomeroy, who resided at Pittsfield, where the manufacturing was done, was assigned that branch which embraced the purchase of the wool. The court has found the following:

*Eleventh.* That said Turnbull knew that said defendant Pomeroy was purchasing wool on credit after June, 1886, for conducting the same kind of business. The court so found.

*Twelfth.* That said Turnbull knew that said Pomeroy continued to use the firm name, "L. Pomeroy's Sons," after June, 1886, and said Pomeroy paid the said Turnbull $5,000, by a check, dated August 17, 1886, signed by said Pomeroy, in the name of "L. Pomeroy's Sons." The court so found.

Mr. Turnbull testified that he was aware that the three trustees purchased wool upon credit. It is quite evident from the facts that there was no apparent change in the manner the business was transacted after the making of the decree from what it had been previous thereto. And there was nothing in that respect to inform Consalus that any change had occurred by the retirement of any of the trustees. It, therefore, appears that the question of notice is reduced to an inference to be drawn substantially from one single fact, viz., the change of the letter-head, and explained, as it has been by the evidence, it seems too indefinite and unsatisfactory to amount to a notice which should have influenced the conduct of Consalus, or such as the law required to exempt the retiring trustee from personal liability under a trust like the one in question, and executed as this had been by the trustees. The sufficiency of such notice must depend upon the circumstance of the particular case, as a notice which should be deemed sufficient under one state of facts might be regarded insufficient under another. In view of all the facts, we think that Consalus was justified in concluding that the wool, for which the notes in suit were executed, was purchased at the instance of all of the trustees, and upon their responsibility, even though the paper used in the correspondence may have exhibited the letter-head as changed. The new letter-head contained

the name of the firm "L. Pomeroy's Sons," also the name Silas H. Pomeroy, trustee. And according to the testimony of Pomeroy the dash preceding the word "trustee" was intended to indicate that he was not alone trustee. At folio 152 of the case he states as follows: "I had the dash put in because I was not alone trustee." We think the change in such letter-head was not sufficient to constitute notice that two of the trustees had retired, and that the inference drawn therefrom by Consalus, under the circumstances, was reasonable and justifiable. He knew that there were three trustees who had had charge of the business under the trust, and that they had purchased wool of him upon credit, which had been used in the business and paid for by them, and, as before stated, the court has so found the fact. Consalus states further that he understood that the trust was created by a will, but did not know the precise terms of the trust. In view of such facts and circumstances, we are persuaded that Consalus, in the exercise of reasonable prudence, was justified in assuming that the trust continued and was being executed by the three trustees, who were responsible for the wool purchased of him, for which the notes were given. Notwithstanding the changes which were introduced into the form of the correspondence, and the paper upon which it was conducted, it is fairly presumable that he made the sales, relying upon the responsibility of the trustees rather than the trust estate, in regard to which he is not shown to have had any definite knowledge. He knew that one of the trustees, Mr. Turnbull, resided in the city of New York, and was there engaged in business, and that the trust estate was situated in Pittsfield, Massachusetts. It would seem to be a natural inference that Consalus would be likely to rely for payment upon the trustees, who could be more conveniently and readily reached, and as to whom the remedy would be more direct and less complicated than against the trust estate. However this may have been, in regard to the motive that prompted him in making the sale of the wool, the fact is established that when the sales were made in 1882 and 1883 the three trustees were conducting the business in execution of such trust, and purchased of Consalus wool upon credit, which was used in the business, and for aught that he knew, or was bound to know under the circumstances, they continued in

the execution of the trust, and, therefore, personally liable to him for the price of the wool sold in 1887, for which the notes were given, and he was, therefore, at liberty to look to the trustees for payment, even though he may have had the impression that in some form the trust estate might be reached. (*Fowler* v. *The Bowery Savings Bank*, 113 N. Y., 450, 454.) As bearing upon the sufficiency of the notice which should have been given to Consalus of the retirement of Turnbull, as trustee, to relieve him of liability, reference is made to *Claflin* v. *Lenheim* (66 N. Y., 301). In that case the court says : " Justice to parties dealing with agents requires that the rule requiring notice in such cases should not be departed from on slight grounds, or equivocal circumstances substituted in place of notice."

As to the rule in regard to notice by a retiring partner to persons who had trusted the firm, in order to avoid liability to such persons for purchases made by the firm after such retirement, we refer to the *Bank of Commonwealth* v. *Mudgett* (41 N. Y., 514); *Claflin* v. *Lenheim* (*supra*, 305); *Fowler* v. *Bowery Savings Bank* (*supra*). Regarding the nature of the business involved in this trust, and the manner the trustees conducted the same, we are satisfied that the rule requiring notice by a retiring partner, to avoid personal liability for debts created after such retirement, applies in this case. This trust was peculiar in its nature, and in its execution necessitated the conducting of a business, the characteristics of which were, in some respects, similar to those which appertain to a partnership, and also to an agency, and we, therefore, conclude that the reason for the rule requiring such notice in the case of a retiring partner, or of a principal who has discharged an agent, in order to protect such persons from liability, applies with equal force to the retiring trustee in this case. Such rule has its foundation in equity, and is salutary in its effect, and should be enforced in favor of those who deal with trustees, who manipulate trust estates, and who alone have the means of knowing whether they are solvent. The facts of this case which bear upon the question of notice, and which are relied upon to sustain it, are substantially undisputed, and, therefore, the question in regard to the sufficiency thereof to establish the same becomes a question of law rather than of fact. (*Claflin* v. *Lenheim*, *supra*, 305.) In our examination of the law upon such question we

have not overlooked the case of *Holt* v. *Allenbrand* (52 Hun, 217).
Regarding the facts of that case, we conclude that it falls far short
of affording substantial support to the theory for which the
respondent's counsel contends in this case. In the case referred to
the changes relied upon to constitute notice of retirement were
marked, and such as were calculated to attract notice, and were
wholly inconsistent with the idea that the relation continued; not so
in the case under consideration, in regard to the letter-head, par-
ticularly as explained by Silas H. Pomeroy, the trustee, who was
a witness produced by the defendants. Mr. Turnbull voluntarily
assumed the trust in question, not gratuitously, as the facts show
that he received $6,000 annually as his individual compensation for
his services, and in addition thereto his share of the commissions
arising from the sale of the manufactured goods which were con-
signed to the commission-house of which he was a member, in
New York, for sale. In view of the facts of this case, and the law
which we deem applicable thereto, we conclude that the defendant
Turnbull became liable upon the notes in suit to the plaintiff herein.
And that he was required by law to give notice to Consalus of his
retirement from such trust previous to the purchase of the wool for
which such notes were executed. And that the facts of this case
fail to establish such required notice.

The judgment should be reversed and a new trial had, with costs
to abide the event of the action.

Judgment affirmed, with costs.