## RECTOR v. STRAUSS.

### Opinion delivered May 27, 1918.

1. BILLS AND NOTES—NEGOTIABILITY.—A note is negotiable only when it contains a written promise to pay money to another unconditionally, absolutely, and at all events. Payment from a special fund which may prove inadequate destroys negotiability.
2. BILLS AND NOTES—ORAL TESTIMONY TO EXPLAIN.—Oral testimony is inadmissible to explain the meaning of a promissory note.
3. BILLS AND NOTES—PAYMENT FROM SPECIAL FUND.—A promissory note containing the following provision *held* non-negotiable: "This note is made upon the condition and with the express understanding that it is to be paid out of the first money received by the Central Ave. Real Estate Co., from the sale of lots, which money would belong to me."

Appeal from Garland Circuit Court; *Scott Wood,* Judge; reversed.

*L. E. Sawyer,* for appellants.

1. The condition and express understanding in the notes as to the fund wherewith to pay them is not am-

biguous, and though notes be assignable under our statute, the condition and express understanding is more than an indication of the fund out of which they are to be paid, and until that particular money comes to the hands of Rector and Belding this suit can not be maintained. 40 Ark. 185; 14 *Id.* 389; 16 *Id.* 595. Our Negotiable Instrument Act has not changed the law. The payee did not rely upon the personal credit of Rector and Belding. The provision for renewal does not alter or change the previous expression of the fund from which the notes were to be paid. The original provisions would be renewed. 7 Cyc. 878. As to the law of other States, see 125 Am. St. 196; 46 Am. Rep. 83; 54 *Id.* 741; 74 Kan. 763; 51 Am. St. 404; 15 Am. Rep. 542; 7 Metc. 588; 54 Ind. 164; 65 Me. 195.

2. There is sufficient upon the face of the notes to put appellee on inquiry, which would have developed the facts testified to by Belding concerning the contract between Laser on one hand and Rector and Belding on the other and this prevents a recovery. Cases *supra.*

*C. T. Cotham* and *Sam'l Frauenthal,* for appellees.

1. The notes sued on must be construed so that every word and provision is given effect, so as to arrive at the intention of the parties. When this is done, it is clear that the notes are payable absolutely and not contingently; that if sufficient money was not received from the sale of the real estate at maturity then time was to be given by renewal. The provision and express understanding that the notes were to be paid out of the *first* money received from the sale of certain lots is in the nature of collateral as security for payment and the negotiability of the notes was not affected. Appellee was an innocent purchaser for value. 41 Ark. 418; 42 *Id.* 22; 102 *Id.* 45; *Ib.* 422.

2. The notes are written contracts and can not be altered nor varied by parol testimony. No word should be treated as surplusage or disregarded and each part

should be given effect. 3 Ark. 258; 18 *Id.* 65; 23 *Id.* 582; 99 *Id.* 112.

3. The promise to pay is unconditional, and to be paid out of the first money received from the sale of certain real estate as security. The various provisions show clearly that the notes were not payable out of a particular fund and not otherwise, but was to be paid in any event, but was secured as stated by real estate to be sold and the first money received applied as payment. The payment is not dependent upon the adequacy of the amount received from real estate sales. Acts 1913, 270, § 3; 8 C. J. 123; 3 R. C. L. 886, § 72; 54 Am. Rep. 737; 101 N. Y. 554; 11 (Ann. Cases 596; Ann. Cas. 1913 C. 930; 54 Ind. 164; 29 Me. 422; 88 *Id.* 339; 35 L. R. A. 647.

### STATEMENT OF FACTS.

Berthold Strauss instituted separate suits against George R. Belding and E. W. Rector upon two instruments claimed to be promissory notes. The circumstances under which they were executed were similar and grew out of the same transaction. Hence the two suits were consolidated. E. W. Rector died, and the suit was revived on the name of Mrs. Rosebud Rector, his executrix. The instrument given by Belding, together with the indorsements on the back thereof, is as follows:

"Hot Springs, Ark., April 4, 1914.

"$2,000.00.

"On or before 12 months after date, for value received, I promise to pay to David Laser, or order, two thousand dollars, with interest thereon at the rate of 8 per cent. per annum from date until paid. This note is made upon the condition and with the express understanding that it is to be paid out of the first money received by the Central Avenue Real Estate Co., from the sale of lots, which money would belong to me. If sufficient money is not received from the sale of real estate with which to pay this note at its maturity, then said note is to be renewed, or a new note given for twelve

months more, upon the payment of interest due on this note.

"(Signed) George R. Belding.

"Endorsed:

"May 7, 1914, paid $500.00.

"David Laser."

Berthold Strauss was the son-in-law of David Laser, and the instruments were transferred to him as collateral security for money advanced by Strauss to Laser. The transfer was made before the maturity of the instruments. Subsequently Laser had not paid Strauss, and Strauss instituted this action to recover on the instruments.

The facts under which Belding and Rector executed the instruments are as follows:

George R. Belding and E. W. Rector owned certain vacant lots and blocks in the city of Hot Springs known as the Morrison-Belding Addition. David Laser owned other blocks and lots known as the Central Avenue Park Addition. The Central Avenue Real Estate Company was incorporated for the purpose of buying these lots and blocks and selling them again for a profit. It was estimated that the value of the blocks and lots owned by David Laser exceeded in value those owned by Belding and Rector in the sum of $4,000. Belding and Rector executed the instruments sued on to Laser for $2,000. The defendants offered to prove by Belding that it was the understanding between the parties that the notes should only be paid out of the proceeds arising from the sale of the lots.

The court excluded this testimony and found that the instruments sued on were negotiable notes and that the plaintiff was a *bona fide* purchaser for value before maturity.

Judgment was rendered accordingly, and the case is here on appeal.

HART, J., (after stating the facts). (1) The question raised by this appeal is whether the instruments sued on are promissory notes. In order to render the

making of the instruments negotiable, they must contain a written promise to pay money to another unconditionally, absolutely and at all events. If the sum promised to be paid is only payable out of a special fund which may prove inadequate to meet the demand in full, the instrument is not negotiable. The reason of the rule is that such an instrument does not carry the general personal credit of the maker thereto, which is one of the essentials of negotiability. 3 R. C. L., sec. 70, p. 884; 8 C. J., p. 123; Daniel on Negotiable Instruments (6 ed.) Vol. 1, par. 51, p. 66; *Worden* v. *Dodge,* 4 Denio (N. Y.) 159, 47 Am. Dec. 247; *Corbett* v. *The State of Georgia,* 24 Ga. 287, and *Munger* v. *Shannon,* 61 N. Y. 251.

(3)   The rule itself is well settled and the only difficulty is in determining whether or not a given case falls within the rule. We think the court properly excluded the testimony of Belding as to what the parties intended the instruments to mean because the language of the instruments themselves makes their meaning plain. We are of the opinion, however, that the court did not construe the instruments according to their plain and natural meaning. The instruments sued on contain the following: ''This note is made upon the condition and with the express understanding that it is to be paid out of the first money received by the Central Avenue Real Estate Company, from the sale of lots, which money would belong to me.'' The Central Avenue Real Estate Company had been incorporated for the purpose of taking over certain lots and blocks belonging to Belding and Rector and to Laser and selling them again at a profit. The instruments sued on were executed by Rector and Belding to Laser to make up a deficiency between the estimated value of their lots and blocks and those belonging to Laser. These were the circumstances surrounding the parties at the time the instruments were executed. We think the fair and natural meaning of the language quoted is that Laser was only to be paid out of that part of the proceeds arising from the sale of the lots which would fall to Belding and Rector.

It will be observed that while the language quoted refers to the instrument as a note, it states that it is made upon the condition and with the express understanding that it is to be paid out of the money arising from the sale of the lots which would belong to Belding and Rector. We think the instruments do not carry the general personal credit of Belding and Rector, but only the credit of their part of the fund arising from the sale of the lots. This construction is borne out by the language of our negotiable instrument act. Acts of 1913, p. 260. Section 1 of the act provides that one of the requirements of a negotiable instrument is that it must contain an unconditional promise or order to pay a certain sum in money. Section 3 reads as follows:

"An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with:

"(1) An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or

"(2) A statement of the transaction which gives rise to the instrument. But an order or promise to pay out of a particular fund is not unconditional."

So here the money is not promised to be paid unconditionally; for it is only payable out of the proceeds of the sale of the lots belonging to Belding and Rector. The last clause of the instrument which provides for its renewal does not change the condition under which the money is to be paid. It provides that if sufficient money is not received from the sale of the lots during the first year to pay the note, then said note is to be renewed upon the payment of the interest due. Where a note by its terms provides for its own renewal on certain conditions, and such conditions arise, so that it becomes renewed, the renewal also renews the stipulations. 8 C. J., p. 442, par. 653.

It follows that the court erred in rendering judgment for the plaintiff and for that error the judgment must be reversed.

Inasmuch as the instruments sued on are not promissory notes, there is no necessity for a remand of the case and the complaint in each case will be dismissed here without prejudice to the right of appellee to enforce in the proper forum whatever rights he may have under the contract. It is so ordered.